Rory T. Kay (NSBN 12416)
John A. Fortin (NSBN 15221)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

*Attorneys for Defendants Frank Petosa,
Ryan Hogan, and Michael Woodside*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MELISSA HUTCHISON aka PHOENIX MARIE, an individual, | Case No.: 2:24-cv-00673-GMN-BNW |
| Plaintiff, | |
| vs. | **DEFENDANTS FRANK PETOSA, RYAN HOGAN, AND MICHAEL WOODSIDE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| ETHICAL CAPITAL PARTNERS, a foreign entity; AYLO PREMIUM LTD, a foreign corporation; DM PRODUCTIONS, a foreign entity; DIGITAL PLAYGROUND, a foreign entity; MIND GEEK USA INCORPORATED, a foreign entity; MG PREMIUM LTD, a foreign entity; DM PRODUCTIONS, a foreign entity; DIGITAL PLAYGROUND, a foreign entity; DANNY MARTIN aka DANNY D, an individual; FRANK PETOSA an individual; RYAN HOGAN, an individual; MICHAEL WOODSIDE, an individual; and DOES 1 through 50, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants Frank Petosa, Ryan Hogan, and Michael Woodside (collectively, the "Moving Defendants") hereby move for an order dismissing the First Amended Complaint ("FAC") filed by Plaintiff Melissa Hutchison p/k/a Phoenix Marie ("Plaintiff") on May 3, 2024, in its entirety with prejudice.

Rule 12(b)(2) requires dismissal with prejudice because Plaintiff cannot establish personal jurisdiction over the Moving Defendants. None of the Moving Defendants are "essentially at home" in Nevada such that general jurisdiction can be conferred over them. As for specific jurisdiction, none of Plaintiff's alleged harms arise out of any Nevada or even U.S.-related activity. To the contrary, all of the alleged events in the FAC took place outside of the United States, in Barcelona, Spain, and Berlin, Germany. As such, Plaintiff cannot satisfy her burden of showing that the Moving Defendants "purposefully directed" their alleged activities towards Nevada or that her claims arise out of the Moving Defendants' "forum-related activities," as no such activities exist.

The FAC also fails to adequately plead essential elements of each claim against each of the Moving Defendants and thus requires dismissal under Rule 12(b)(6). As a preliminary matter, Plaintiff improperly groups the Moving Defendants together without alleging sufficient facts demonstrating how each Moving Defendant participated in the alleged wrongdoing. Substantively, Plaintiff's Fifth Cause of Action for Intentional Interference with Contractual Relations and Sixth Cause of Action for Intentional Interference with Prospective Advantage fail because Plaintiff does not allege with any specificity which alleged contracts or prospective opportunities were purportedly interfered with by the Moving Defendants or how the Moving Defendants supposedly interfered with those alleged contracts or opportunities. Plaintiff's Seventh Cause of Action for Intentional Infliction of Emotional Distress fails because it does not contain any factual allegations that any Moving Defendant took any action whatsoever to cause Plaintiff's emotional distress; rather, Plaintiff's intentional infliction of emotional distress claim alleges that her emotional distress was caused *solely* by the alleged conduct of Defendant Danny Martin ("Danny D.") (who is not one of the Moving Defendants). Plaintiff's Eighth Cause of Action for Defamation *Per Se* fails because Plaintiff does not allege any specific defamatory comments attributable to *any* of the Moving Defendants, or when, where, or to whom they were made. Finally, Plaintiff's Ninth Cause of Action for Civil Conspiracy fails because Plaintiff cannot assert a civil conspiracy claim without alleging a viable underlying tort, and all of Plaintiff's tort claims against the Moving Defendants fail. In addition, Plaintiff fails to allege any facts that support a

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    plausible inference that any of the Moving Defendants conspired with one another to achieve an

2    unlawful purpose.

3           For all of these reasons and the reasons detailed below, dismissal of Plaintiff's FAC is

4    proper.

5           Dated this 1st day of July, 2024.

6                                            McDONALD CARANO LLP

7

8                                            By:  /s/  Rory T. Kay
                                                  Rory T. Kay (NSBN 12416)
9                                                 John A. Fortin (NSBN 15221)
                                                  2300 West Sahara Avenue, Suite 1200
10                                                Las Vegas, Nevada 89102
                                                  rkay@mcdonaldcarano.com
11                                                jfortin@mcdonaldcarano.com

12                                           *Attorneys for Defendants Frank Petosa,*
                                             *Ryan Hogan, and Michael Woodside*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff alleges[1] that she is an adult performer who, under the name "Phoenix Marie," performs in adult films and attends adult-themed events and expositions.  In this action, Plaintiff asserts nine causes of action, but only asserts five causes of action against the Moving Defendants for: (i) Intentional Interference with Contractual Relations (ECF No. 9 ¶¶ 121-27); (ii) Intentional Interference with Prospective Business Advantage (*id*. ¶¶ 128-34); (iii) Intentional Infliction of Emotional Distress (*id*. ¶¶ 135-44); (iv) Defamation *Per Se* (*id*. ¶¶ 145-59); and (v) Civil Conspiracy (*id*. ¶¶ 160-66).  ¶

This matter mirrors the jurisdictional defects that plagued the Nevada plaintiffs in *Walden* that sought to be heard in the Silver State as opposed to Georgia where the events at issue actually took place.  *See Walden v. Fiore*, 571 U.S. 277 (2014).  Just as the exercise of jurisdiction offended the notions of "fair play and substantial justice" in *Walden*, the exercise of personal jurisdiction over the Moving Defendants here would likewise violate the Fourteenth Amendment's Due Process clause.

Plaintiff simply has no basis to bring this action in Nevada.  None of the Moving Defendants are subject to personal jurisdiction in this state.  The declarations filed concurrently with this Motion foreclose any claim that the Moving Defendants are "essentially at home" in Nevada such that general jurisdiction can be conferred over them.  Nor did any of Plaintiff's alleged harms arise out of any Nevada or even U.S.-related activity.  To the contrary, all of the alleged events in the FAC took place outside of the United States, with the two key incidents that serve as the foundation for her claims having allegedly occurred in Barcelona, Spain, and Berlin, Germany.  As such, Plaintiff cannot satisfy her burden of showing that the Moving Defendants "purposefully directed" their alleged activities towards Nevada or that her claims arise out of the Moving Defendants' "forum-related activities," as none exist.  The FAC should be dismissed with prejudice for this reason alone.

---

[1]     At the pleading stage, all of Plaintiff's allegations are taken as true but by reciting these allegations, the Moving Defendants are not conceding the allegations are, in fact, true.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

While this Court's lack of jurisdiction over the Moving Defendants is reason enough to dismiss the FAC with prejudice, there are numerous other reasons why the FAC should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). As a threshold matter, Plaintiff improperly groups all of the Moving Defendants together without alleging facts sufficient to demonstrate how each Moving Defendant participated in each alleged wrongdoing. As a result, Plaintiff has not plausibly pleaded essential elements of each claim against each of the Moving Defendants.

Moreover, each of Plaintiff's causes of action fails to state a claim upon which relief can be granted. First, Plaintiff's claims for Intentional Interference with Contractual Relations (ECF No. 9 ¶¶ 121-27) and Intentional Interference with Prospective Advantage (*id.* ¶¶ 128-34) are entirely conclusory. Plaintiff does not allege with any specificity what alleged contracts or opportunities were allegedly interfered with by the Moving Defendants or how the Moving Defendants allegedly interfered with those contracts or opportunities. In fact, although the heading of Plaintiff's Fifth Cause of Action purports to assert claims against all Defendants, the allegations refer solely to "Aylo"; nowhere does the Fifth Cause of Action specifically reference any of the Moving Defendants.

Second, Plaintiff's claim for Intentional Infliction of Emotional Distress (*id.* ¶¶ 135-44) does not contain any factual allegations that any Moving Defendant took any action whatsoever to cause Plaintiff's emotional distress; rather, Plaintiff's claim alleges that her emotional distress was caused **solely** by the alleged conduct of Defendant Danny Martin (who is not one of the Moving Defendants). Third, Plaintiff's claim for Defamation *Per Se* (*id.* ¶¶ 145-59) fails to allege any specific defamatory or libelous comments attributable to *any* of the Moving Defendants, or when, where, or to whom they were made. Fourth, Plaintiff's claim for Civil Conspiracy (*id.* ¶¶ 160-66) fails because Plaintiff cannot assert a civil conspiracy claim without alleging a viable underlying tort, and, as set forth above, Plaintiff's tort claims against the Moving Defendants all fail. Plaintiff also fails to allege any facts supporting a plausible inference that any of the Moving Defendants conspired with one another to achieve an unlawful purpose.

Jurisdictional principles under Rules 12(b)(2) and 12(b)(6) require dismissal of the FAC.

## II.     FACTUAL BACKGROUND

Plaintiff alleges that she is an adult performer who, under the name "Phoenix Marie," entered into written agreements with "Defendants' companies" to perform in adult films and attend adult-themed events and expositions.  (ECF No. 9 ¶¶ 29-30).

Plaintiff further alleges in her FAC that, in October 2023, Plaintiff traveled to Barcelona to shoot scenes for a project for Defendant Danny D. and Aylo Premium Ltd.'s studio Digital Playground.  (*Id*. ¶ 37).  During filming, the main actors, including a female with the screen name Zaawaadi, were staying in a residence along with some of the other staff.  (*Id.* ¶¶ 38, 43).  Plaintiff claims that Danny D.'s partner, Liss, also attended the Barcelona shoot as the makeup artist, production manager, and talent liaison.  (*Id.* ¶ 40).  At the time of the shoot, Liss was taking lithium for depression.  (*Id.* ¶ 42).

During the Barcelona shoot, Zaawaadi had to perform an anal sex scene.  (*Id.* ¶ 44).  Plaintiff details that she spoke with Zaawaadi prior to the scene and gave Zaawaadi two probiotic pills and two laxative pills.  (*Id.* ¶¶ 44-46).  Plaintiff alleges that on the final day of shooting, Plaintiff was filming a scene when Liss came out of the house screaming that there was an emergency.  (*Id.* ¶¶ 48-49).  Plaintiff claims that she ran into the house where Zaawaadi was laying on the couch, shaking violently and screaming that she could not breathe.  (*Id.* ¶ 51).  Plaintiff then asked Zaawaadi if she had taken any drugs or medicines lately, and Zaawaadi said, "only the 4 pills you gave me."  (*Id.* ¶ 55).  Zaawaadi was subsequently taken to the hospital by paramedics.  (*Id.* ¶¶ 56-57).

Plaintiff alleges that the next day, Danny D. informed Plaintiff that Zaawaadi had overdosed on lithium and was in a medically induced coma.  (*Id.* ¶ 65).  Danny D. purportedly questioned Plaintiff about lithium and demanded to see the probiotics and laxatives Plaintiff claims she shared with Zaawaadi.  (*Id.* ¶ 64).  The following day, the attendees of the Barcelona shoot traveled to Berlin for an adult convention.  (*Id.* ¶ 72).  Supposedly, when Plaintiff arrived at her Berlin hotel, "Aylo executives," including Defendants Petosa and Hogan, "falsely blamed [her] for the lithium poisoning in Barcelona."  (*Id.* ¶¶ 75-81).

Plaintiff further alleges that, after she left Berlin, "the Defendants and others" spread unspecified "falsehoods" about Plaintiff "all over the industry." (*Id*. ¶ 87). However, Plaintiff never alleges ***what*** those purported false statements were, ***who*** supposedly made the statements, ***when*** they were made, or to ***whom***. Instead, Plaintiff only offers the following vague allegations:

- Adult actress Angela White told Plaintiff that in Berlin, she heard from another actor that "Spain was a shit show, but thankfully the person responsible [i.e. Plaintiff] is not here." (*Id*. ¶ 88).

- An unnamed "external brand sponsor" told Plaintiff that an unspecified "mutual partner" told him to "distance himself from working with [Plaintiff] in the future, as there's something shady going on around her." (*Id.* ¶ 89).

- Adult actor Manuel Ferrara "heard things were going on." (*Id.* ¶ 91).

- Adult actor Ricky Johnson told her "I just heard from [Petosa]. I know there's some drama around [Barcelona]. I know it wasn't anything good because we all know the rumors going around." (*Id.* ¶ 91).

- An unnamed "Las Vegas-based makeup artist" told Plaintiff that another industry makeup artist asked, "do you think she really did it?" (*Id.* ¶ 93).

- In a text conversation between Plaintiff and Melissa Hogan, Defendant Hogan's wife, "it was clear that Ryan Hogan had told his wife about the accusation," but nowhere does Mrs. Hogan reference the alleged accusation or make clear that she knows what it was. (*Id.* ¶ 94).

- "Defendants and their representatives and executives" have "spread lies in the adult community about [Plaintiff] regarding alcohol and drug abuse, the criminal act of poisoning an individual, and her reputation in the business." (*Id.* ¶ 146).

On February 15, 2024, Plaintiff commenced this action in Nevada state court. On April 5, 2024, the Moving Defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446. (ECF 1). On May 3, 2024, Plaintiff filed her FAC, alleging: (i) Intentional Interference with Contractual Relations (ECF No. 9 ¶¶ 121-27); (ii) Intentional Interference with Prospective Business Advantage (*id*. ¶¶ 128-34); (iii) Intentional Infliction of Emotional Distress

(*id.* ¶¶ 135-44); (iv) Defamation *Per Se* (*id.* ¶¶ 145-59); and (v) Civil Conspiracy (*id.* ¶¶ 160-66). The Moving Defendants now move to dismiss for the following reasons.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS

The Court should dismiss this action against the Moving Defendants pursuant to Federal Rule of Civil Procedure 12(b)(2) due to lack of personal jurisdiction.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  It is thus Plaintiff's burden to establish at least one of the "two types of personal jurisdiction: general and specific," for every claim.  *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 255 (2017).  To satisfy that burden, Plaintiff must make a *prima facie* showing of jurisdictional facts.  In determining whether this burden has been satisfied, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Fiore v. Walden*, 657 F.3d 838, 846-47 (9th Cir. 2011), *overruled on other grounds by Walden v. Fiore*, 571 U.S. 277 (2014).  "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *Ama Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).[2]

Plaintiff cannot meet her burden of showing that any of the Moving Defendants are subject to either general or specific jurisdiction in Nevada.

/ / /

/ / /

---

[2]      "Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800.  Because the reach of Nevada's long-arm jurisdictional statute is "coextensive with the outer limits of federal due process," the jurisdictional analyses under state law and federal due process are the same. *See, e.g.*, *Abraham v. Agusta, S.P.A.*, 968 F. Supp. 1403, 1407 (D. Nev. 1997).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

### A.    The Moving Defendants Are Not Subject To General Jurisdiction

As the Supreme Court stated in *Daimler v. AG Bauman*, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  571 U.S. 117, 137 (2014).  Plaintiff does not allege that *any* of the Moving Defendants reside in Nevada (*see* ECF No. 9 ¶¶ 12-14), because they do not.  Hogan resides in Los Angeles, California; Petosa resides in Quebec City, Quebec; and Woodside resides in Montreal, Quebec.  (*See* **Exhibit A**, Petosa Decl. ¶ 4; **Exhibit B**, Hogan Decl. ¶ 4; **Exhibit C,** Woodside Decl. ¶ 4).

Plaintiff does not allege any ***facts*** connecting the Moving Defendants to Nevada. Plaintiff's vague and conclusory allegation that the Moving Defendants "sell millions of dollars' worth of pornographic materials in the State of Nevada and attend and promote large conventions in the State of Nevada" (ECF No. 9 ¶ 22) is insufficient to confer jurisdiction.  As detailed below, this allegation improperly lumps all of the individual Moving Defendants together with all of the corporate Defendants and, even if true, still does not provide any basis to find that any of the Moving Defendants' contacts with Nevada are so "continuous and systematic" that they are "essentially at home" in Nevada.  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017); *Schwarzenegger*, 374 F.3d at 801 (explaining that allegations that company purchased cars imported by California entities, had contracts subject to California law, retained a California marketing company, hired a California training company, and maintained website accessible by California residents fell "well short").

### B.    The Moving Defendants Are Not Subject To Specific Jurisdiction

There is likewise no specific jurisdiction over the Moving Defendants. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation" (*Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)), and "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction" (*Bristol-Myers*, 582 U.S. at 262 (citation omitted)).  Due process requires a ***direct connection*** between the alleged harm and the defendant's contacts with the forum state.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in

the State." *Id.* at 264; *see also Schwarzenegger*, 374 F.3d at 802 ("the claim must be one which arises out of or relates to the defendant's forum-related activities" and "the exercise of jurisdiction must comport with fair play and substantial justice"); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) ("As [plaintiff] does not argue [defendant's] contacts with [the forum] give rise to or relate to her cause of action, specific jurisdiction is not at issue."). Importantly, a defendant's contacts with a person who resides in the forum, including an "injury to a forum resident[,] is not a sufficient connection to the forum." *Walden*, 571 U.S. at 289. And a "defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers*, 582 U.S. at 265. While courts must consider "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice[,] . . . the 'primary concern'" in evaluating specific jurisdiction "is 'the burden on the defendant.'" *Id.* at 263.

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods*, 874 F.3d at 1068. Plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If Plaintiff meets that burden, "the burden then shifts to the" Moving Defendants "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* Plaintiff cannot satisfy any of the specific jurisdiction requirements to hale the Moving Defendants into Nevada.

          **1.**    ***The Moving Defendants did not purposefully direct their activities at Nevada***.

Where, as here, Plaintiff asserts tort claims against the Moving Defendants, the court applies the "purposeful direction" test, often referred to as the "effects" test. *Axiom Foods*, 874 F.3d at 1069. To satisfy this test, the Moving Defendants must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.*

### a. ***Defendants did not expressly aim their conduct at Nevada***.

Here, the Moving Defendants did not commit an intentional act expressly aimed at Nevada. *See Calder v. Jones*, 465 U.S. 782, 788-89 (1984) (recognizing that the intentional tort of libel "was the focal point both of the story and of the harm suffered" and the "brunt" of the injury occurred in California by a California plaintiff). The FAC does not allege—nor could it—that any of Plaintiff's alleged harms arose out of any Nevada or even U.S.-related activity. To the contrary, all of the conduct of the Moving Defendants alleged in the FAC took place outside of the United States, in Barcelona, Spain, and Berlin, Germany. (*See* ECF No. 9 ¶¶ 28, 57). Thus, Plaintiff fails to satisfy the express aiming requirements set forth in *Calder*.

### b. ***Defendants had no knowledge that any purported harm would be felt in Nevada.***

Plaintiff's residency cannot be the only connection or contact with Nevada. *See Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone is an insufficient basis for jurisdiction."). Indeed, as the United States Supreme Court explained, even the Moving Defendants' knowledge that Plaintiff resided in Nevada is not enough for this Court to exercise personal jurisdiction over the Moving Defendants. *Id*. at 289 (explaining that a defendant's actions in another location "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections"). This is because providing this type of jurisdictional hook would "obscure the reality that none of petitioner's challenged conduct had anything to do with Nevada itself." *Id*. The *Walden* analysis is nearly identical to the analysis in this matter such that this Court should enter the same result—dismissal.

### 2. ***Plaintiff's claims do not arise from forum-state activities***.

Dovetailing with the lack of purported harm felt in Nevada, Plaintiff cannot satisfy prong two, demonstrating her harms "arise[] out of or relate to" the Moving Defendants "forum related activities," as there indisputably are no "forum related activities" by the Moving Defendants alleged in the FAC. (*See generally* ECF No. 9). The only connection this case has to Nevada is Plaintiff's alleged residence, which as detailed above, is insufficient. *See, e.g., Schwarzenegger*,

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

374 F.3d at 802 ("It may be true that Fred Martin's intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may have known that Schwarzenegger lived in California. But this does not confer jurisdiction"); *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Because the episode-in-suit, the bus accident, occurred in France, and the tire alleged to have caused the accident was manufactured and sold abroad, North Carolina courts lacked specific jurisdiction to adjudicate the controversy."); *Ponder v. Wild*, 2018 WL 473003, at *3 (D. Nev. Jan. 18, 2018) ("[T]he amended complaint does not clearly demonstrate a *prima facie* case of personal jurisdiction over defendant … all of the other allegedly defamatory conduct appears to have occurred outside the state of Nevada.") (denying motion to amend complaint).[3]  Thus, Plaintiff cannot satisfy the second prong of the specific jurisdiction analysis, and dismissal is warranted.

### 3. *Jurisdiction cannot be reasonable because Plaintiff cannot meet her burden under the first two prongs of the specific jurisdiction test.*

Because Plaintiff cannot satisfy the first two prongs, the Court need not assess whether the exercise of jurisdiction over the Moving Defendants would be reasonable under the third prong. However, even if the Court did reach the third prong of this analysis, the exercise of jurisdiction over the Moving Defendants—three individuals who do not reside in Nevada and who are not alleged to have committed any intentional acts in or directed towards Nevada—would be, without question, entirely unreasonable and contrary to law.  *See, e.g.*, *Shull v. Univ. of Queensland*, 2019 WL 3502889, at *4 (D. Nev. July 31, 2019) ("It would be unfair and unreasonable under the circumstances of this case to force the defendants to be haled into court" in Nevada where "defendants are not connected to Nevada in any jurisdictionally meaningful way" and "[n]othing could have suggested to the defendants that they would later be expected to defend themselves in a Nevada court.").

---

[3]   Plaintiff's vague allegations that an unnamed "local Las Vegas-based makeup artist" allegedly told Hutchison that another unnamed "industry makeup artist" asked "do you think she did it?" (ECF No. 9 ¶ 93) is likewise insufficient to confer specific jurisdiction over the Moving Defendants, as it fails to show any intentional act aimed at Nevada by the Moving Defendants.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

In sum, Plaintiff failed to meet her *prima facie* burden that it comports with the notions of "fair play and substantial justice" for this Court to exercise personal jurisdiction over these foreign defendants, for acts that occurred in a foreign country, simply because Plaintiff resides in Nevada.

## III.   THE FAC FAILS TO STATE A CLAIM AGAINST THE MOVING DEFENDANTS

In the alternative, even if this Court finds that this action was properly filed in Nevada, Rule 12(b)(6) requires dismissal for failure to state a claim against the Moving Defendants.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim[s]" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570). Courts routinely dismiss claims "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Courts also "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended*, 275 F.3d 1187 (9th Cir. 2001).

### A.   Plaintiff's Claims Suffer From Improper Group Pleading.

All of Plaintiff's claims should be dismissed because she failed to differentiate among any of the Moving Defendants or allege sufficient facts demonstrating how each Moving Defendant engaged in any of the alleged conduct at issue. Instead, Plaintiff lumps all of the Moving Defendants together and fails to distinguish her allegations among them.

To properly assert her claims against multiple defendants, Plaintiff "must allege the basis of [her] claim against ***each defendant*** to satisfy Federal Rule of Civil Procedure 8(a)(2)." *Bertsch v. Discover Fin. Servs.*, 2020 WL 1170212, at *3 (D. Nev. Mar. 11, 2020). Plaintiff has failed to do so, and her "[i]mproper lumping" of Defendants requires dismissal of the FAC. *See, e.g.,*

*Duenas v. Wal-Mart Stores E., LP*, 2022 WL 4624226, at *1 (D. Nev. Sept. 30, 2022) ("[C]omplaints that lump defendants together without adequately distinguishing claims and alleged wrongs among the defendants are improper") (granting motion to dismiss); *Bertsch*, 2020 WL 1170212, at *3 (granting motion to dismiss: "nowhere does Plaintiff identify any actions or omissions attributable to a particular Defendant."); *McHenry v. Renne*, 84 F.3d 1172, 1175 (9th Cir. 1996) (dismissing claims that "vaguely refer[red] to 'defendants' or 'other responsible authorities'"); *Rust v. Borders*, 2019 WL 12375434, at *5 (C.D. Cal. Mar. 17, 2019) ("Plaintiff's use of terms such as 'Defendant[]' [or] 'Defendants[]' …without identifying the specific Defendant or Defendants assertedly involved in the alleged wrongdoing is improper.").

The undifferentiated allegations are especially problematic here, since Plaintiff never distinguishes how any of the Moving Defendants had anything to do with the events alleged in the FAC.  (*See generally* ECF No. 9).  Thus, it is impossible to tell which Moving Defendant engaged in what alleged wrongful conduct.

Plaintiff cannot justify her undifferentiated "group" pleading through conclusory alter ego and agency allegations.  (ECF No. 9 ¶¶ 17-21).  These allegations consist solely of legal conclusions, such as that the corporate Moving Defendants "constitute the alter egos of each other" or were "Plaintiff's joint employers by virtue of a joint enterprise."  *Id*.  Such allegations are insufficient.  *See, e.g.*, *Gowen v. Tiltware LLC*, 2009 WL 1441653, at *5 (D. Nev. May 19, 2009), *aff'd*, 437 F. App'x 528 (9th Cir. 2011) ("[C]onclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each."); *Horton v. NeoStrata Co. Inc.*, 2016 WL 11622008, at *3 (S.D. Cal. Nov. 22, 2016) (improper "group pleading" where "Plaintiff has not pled any facts that, accepted as true, could establish the elements of alter ego liability, and has not presented evidence to the Court that proves that any of the Defendants were under the direction and/or control of the others").  For this reason alone, all of Plaintiff's claims should be dismissed.

### B.  Plaintiff's Claim for Interference with Contractual Relations Fails.

While the heading of Plaintiff's Fifth Cause of Action purports to assert a claim against all Defendants, the allegations refer solely to "Aylo."  (ECF No. 9 ¶¶ 121-27).  Accordingly, it is

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

unclear whether Plaintiff asserts her Fifth Cause of Action for Interference with Contractual Relations against any defendants other than "Aylo," including against any of the Moving Defendants. Regardless, Plaintiff fails to sufficiently state a claim for interference with contractual relations.

To state a claim for intentional interference with contractual relations, a plaintiff must allege: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *J. J. Indus. LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003); *Keating v. Gibbons*, 2010 WL 11594814, at *7 (D. Nev. Mar. 26, 2010). "[M]ere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *J. J. Indus. LLC*, 71 P.3d at 1268.

Plaintiff does not allege the existence of any particular contract the Moving Defendants allegedly interfered with; nor does Plaintiff allege what the Moving Defendants did to purportedly interfere. (*See generally* ECF No. 9). Plaintiff only offers a vague and conclusory allegation that "Aylo"—not any of the individual Moving Defendants—"disrupted" her "contractual relationships" with unnamed "customers and representatives in the adult industry and other endeavors outside of the industry, i.e. conventions, other promotional events, etc." (*Id.* ¶ 122). This is insufficient. *See, e.g.*, *Image Online Design, Inc. v. Internet Corp. for Assigned Names and Numbers*, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013) (dismissing claim where plaintiff "has not alleged any facts identifying the particular contracts, the actual disruption of these contracts, or any actual damage"; plaintiff "must allege actual interference with actual contracts, such that the result is a specific breach, not merely general damage to the business."); *S. Cal. Elec. Firm v. So. Cal. Edison Co.*, 2023 WL 2629893, at *12 (C.D. Cal. Jan. 10, 2023) (dismissing claim where "allegations fail to identify a specific contract, the parties to the contract … or the substance and date of the contract") (collecting cases). Dismissal of Plaintiff's Fifth Cause of Action as to the Moving Defendants is therefore proper.

**C.**     **Plaintiff's Claim for Intentional Interference with Prospective Economic Advantage Fails.**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege (1) a prospective contractual relationship between the plaintiff and a third party; (2) that the defendant knew of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1174 (D. Nev. 2016); *Boskovich v. Nye Cnty.*, 2022 WL 2481636, at *2 (D. Nev. July 5, 2022).   Plaintiff's eighth cause of action for interference with prospective economic advantage fails for multiple reasons.  (*See* ECF No. 9 ¶¶ 128-34).

First, to establish the requisite "intent to harm" a plaintiff must allege that "the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable." *Matthys v. Barrick Gold of N. Am., Inc.*, 2020 WL 7186745, at *4 (D. Nev. Dec. 4, 2020). However, Plaintiff does not allege any such facts.  Instead, she only alleges in conclusory fashion that "Defendants intended to harm [Plaintiff] by preventing these relationships."  (ECF No. 9 ¶ 131).  This is insufficient.  *See, e.g.*, *Kraja*, 202 F. Supp. 3d at 1174-75 (dismissing intentional interference with prospective economic advantage claim where "complaint does not plausibly allege that [defendant] intended to harm [plaintiff]"); *Song v. MTC Fin., Inc.*, 2021 WL 1601085, at *6-7 (D. Nev. Apr. 23, 2021) (dismissing intentional interference claim where "no plausible allegation that defendants knew about any *specific* prospective relationship or had an intent to harm said relationship").

Second, to sufficiently allege this claim, "it is essential that the plaintiff plead facts showing that defendant interfered with plaintiff's relationship ***with a particular individual***." *Matthys*, 2020 WL 7186745, at *4.  However, Plaintiff only vaguely alleges that the Moving Defendants interfered with Plaintiff's "prospective contractual relationship" between Plaintiff and unnamed "third-party companies both related and unrelated to the adult industry."  (ECF No. 9 ¶ 129).  But "[g]eneral allegations that the plaintiff had ongoing expectations in continuing economic relationships … is insufficient." *Matthys*, 2020 WL 7186745, at *4; *NLRK, LLC v.*

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*Indoor Ag-Con, LLC*, 2022 WL 293252, at *5 (D. Nev. Jan. 31, 2022) (dismissal due to failure "to allege a specific relationship or a specific prospective customer relationship that NLRK allegedly interfered with."). Plaintiff also fails to allege that Defendants were specifically aware of any of these (unidentified) prospective relationships. *See, e.g.*, *Song*, 2021 WL 1601085, at *6-7.

Third, Plaintiff fails to allege "how [the Moving Defendants'] actions *actually interfered* with a prospective economic advantage," including "facts to show actual interference by [the Moving Defendants]." *Boskovich*, 2022 WL 2481636, at *2 (emphasis in original). Plaintiff also does not allege "actual harm," *i.e.* that she "would have been awarded the contract but for the [Moving Defendants'] interference." *Matthys*, 2020 WL 7186745, at *5.

Plaintiff fails to offer any facts in support of this cause of action; all she offers are labels and legal conclusions. This claim should be dismissed. *See, e.g.*, *Matthys*, 2020 WL 7186745, at *5 (granting motion to dismiss where complaint "does little more than offer labels and legal conclusions and reiterate the statutory elements without providing facts to support the elements of the claim.").[4] Dismissal of Plaintiff's sixth cause of action as to the Moving Defendants is therefore proper.

### D. Plaintiff's Intentional Infliction of Emotional Distress Claim Fails.

The elements of an intentional infliction of emotional distress ("IIED") claim are: (1) extreme and outrageous conduct with either the intention of, or disregard for, causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual or proximate causation. *Lorador v. Veseli*, 2010 WL 11579726, at *1 (D. Nev. Feb. 25, 2010). "Extreme and

---

[4]   Plaintiff's allegations that "Aylo and executives" "demoted [Plaintiff's] material" on "high-traffic websites that Aylo controls, like Brazzers and Pornhub" and "untagged her from all of her Brazzers videos on Pornhub" (ECF No. 9 ¶¶ 95-96), cannot form the basis for her tortious interference claims against the Moving Defendants. Neither allegation alleges any specific conduct by any of the Moving Defendants. Moreover, to the extent that Plaintiff contends that the Moving Defendants were acting on Aylo's behalf in connection with these alleged acts, a party cannot tortiously interfere with its own contracts and/or business relationships. *See, e.g.*, *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1195 (D. Nev. 2006) ("In Nevada, a party cannot, as a matter of law, tortuously interfere with its own contract."); *Singman v. NBA Props., Inc.*, 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014) (holding that "[a] person cannot be liable for interfering with its own economic relationship." Dismissing interference claims).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

outrageous conduct" is "outside all possible bounds of decency" and is regarded as "utterly intolerable" in a civilized community. *Schoenle v. GSL Props., Inc.*, 2011 WL 2600437, at *4 (D. Nev. June 29, 2011). The plaintiff's emotional distress "must be so severe and of such intensity that no reasonable person could be expected to endure it." *Id.* Plaintiff's seventh cause of action fails to meet these requirements. (*See* ECF No. 9 ¶¶ 135-44).

As discussed above, the FAC fails to differentiate between the alleged conduct of the various Defendants and improperly lumps their alleged conduct together. And as for this cause of action, the FAC does not contain any factual allegations that any Moving Defendant took any action whatsoever to cause Plaintiff's emotional distress, let alone that such conduct was extreme or outrageous, or that they did anything knowingly or intentionally. (*Id.*). To the contrary, Plaintiff's IIED claim alleges that her emotional distress was caused ***solely*** by the alleged conduct of Danny D. (*Id.*). Plaintiff's IIED claim alleges only that she suffers from severe emotional distress because Danny D. (not any of the Moving Defendants) "forced" Plaintiff to complete the sex scene that was being filmed after the emergency incident involving Zaawaadi, despite her requests that they continue the scene another time. (*Id.* ¶¶ 136-138). Plaintiff further alleges that she suffers from "severe emotional distress" that "was caused by the conduct of Danny D." (*Id.* ¶¶ 141-142). None of these allegations have anything to do with the Moving Defendants or their alleged conduct.[5]

Putting aside the fact that the FAC is devoid of any specific allegations concerning the Moving Defendants, Plaintiff also fails to allege that she suffers from the requisite level of emotional distress sufficient to assert an IIED claim. Plaintiff alleges that she suffers from "severe emotional distress" in the form of "anxiety, panic attacks, sleepless nights, and sexual

---

[5]     Plaintiff alleges in passing "Danny D. and other defendants covered up the true source of Zaawaadi's lithium overdose by publicly blaming [Plaintiff] for the criminal act of poisoning another person, refusing to conduct even the most cursory investigation into the shoot, and perpetuating the rumor throughout the industry so she was blackballed and outcasted." (ECF No. 9 ¶ 139). Even assuming the truth of these allegations, such statements hardly constitute "extreme and outrageous conduct" sufficient to state a claim for IIED. *See, e.g.*, *Schoenle*, 2011 WL 2600437, at *4 (rumor accusing plaintiff of intimate relations with co-workers "[did] not rise to the level of 'extreme or outrageous'").

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    dysfunction[.]" (*Id*. ¶¶ 141).    But the law is clear that "[i]nsomnia and general physical or

2    emotional discomfort are insufficient." *Lorador*, 2010 WL 11579726, at *1; *Warren v. Tree*, 2024

3    WL 147787, at *2 (D. Nev. Jan. 11, 2024).    Dismissal of Plaintiff's seventh cause of action is

4    therefore proper.

5        **E.      Plaintiff's Defamation Claim Fails.**

6        The elements required of Plaintiff's defamation claim are (1) a false and defamatory

7    statement; (2) an unprivileged publication to a third person; (3) fault, amounting actual malice; and

8    (4) actual or presumed damages. *Boskovich*, 2022 WL 2481636, at *3.    A plaintiff must plead

9    these elements with "factual specificity" in order to withstand a motion to dismiss, which requires

10   a plaintiff to identify what the alleged defamatory statements consisted of, who made the alleged

11   defamatory statements, to whom the statements were made, and when the statements were made.

12   *See, e.g.*, *Ponder*, 2018 WL 473003, at *3; *see also Boskovich*, 2022 WL 2481636, at *3 n.35

13   (defamation claim must list "the precise statements alleged to be false and defamatory, who made

14   them[,] and when.").    Plaintiff's eighth cause of action does not meet these requirements.  (*See*

15   ECF No. 9 ¶¶ 145-59).

16       The FAC is devoid of any specific defamatory or libelous comments attributable to *any* of

17   the Moving Defendants, or when, where, or to whom they were made.    The FAC only vaguely

18   alleges that "the Defendants and others spread falsehoods about [Plaintiff] all over the industry"

19   (*id*. ¶ 87) and that "Defendants and their representatives and executives have spread lies in the

20   adult community about [Plaintiff] regarding alcohol and drug abuse, the criminal act of poisoning

21   an individual, and her reputation in the business" (*id*. ¶ 146).

22       These allegations are insufficient to state a claim for defamation.  *See, e.g.*, *Boskovich*,

23   2022 WL 2481636, at *4 (dismissing defamation claim "[b]ecause it remains unclear to the court

24   from the face of Boskovich's second-amended complaint which defamatory statements she

25   believes Arabia made"); *Ponder*, 2018 WL 473003, at *3 ("vague and conclusory allegations"

26   insufficient where "[n]one of plaintiff's allegations … describe a defamatory statement that was

27   made, who it was made by, to whom it was made, and when the statement was made"); *Blank v.*

28   *Hager*, 360 F. Supp. 2d 1137, 1160 (D. Nev. 2005), *aff'd*, 220 F. App'x 967 (9th Cir. 2007)

(dismissing defamation claim that failed to identify when and to whom statements were made).

Dismissal of Plaintiff's eighth cause of action is therefore proper.

### F.  **Plaintiff's Civil Conspiracy Claim Fails.**

"Conspiracy is not an independent cause of action in and of itself, but must be premised on an intentional tort." *Rivercard, LLC v. Post Oak Prods., Inc.*, 2013 WL 1908315, at *4 (D. Nev. May 16, 2013). To state a claim for civil conspiracy, the complaint must allege (1) formation and operation of the conspiracy; (2) wrongful act(s) done pursuant thereto; and (3) damage resulting from such act(s). *Id.* Plaintiff's ninth cause of actions fails these requirements. (*See* ECF No. 9 ¶¶ 160-66).

Plaintiff alleges in conclusory fashion that the Moving Defendants conspired "to harm [Plaintiff] … to make [Plaintiff] the scapegoat for the bad acts of Danny D." (*Id.* ¶ 162). Plaintiff's conspiracy claim fails for multiple reasons. First, Plaintiff cannot assert a conspiracy claim without alleging a viable underlying tort, as conspiracy is not actionable in and of itself. Because, as set forth above, there are no valid underlying claims, the civil conspiracy claim fails. *See, e.g.*, *Friedman v. U.S.*, 2019 WL 121965, at *5 (D. Nev. Jan. 7, 2019) (civil conspiracy claim dismissed where plaintiff "ha[d] not alleged plausible claims" for underlying torts); *Rivercard*, 2013 WL 1908315, at *5 ("[B]ecause the underlying tort claims fail, so does plaintiff's claim for civil conspiracy").

Second, Plaintiff has not pled any facts that support a plausible inference that any of the Moving Defendants conspired with one another to achieve an unlawful purpose. Plaintiff's underlying tort claims are directed at all of the Moving Defendants, with no specific allegations as to what the purported co-conspirators did to further any purported conspiracy. *See, e.g.*, *Daria v. Hurly*, 2015 WL 5736667, at *5 (N.D. Cal. Oct. 1, 2015) (no claim where plaintiff "alleges that all Defendants have committed the underlying torts against her" and failed to "allege specific action on the part of each defendant that corresponds to the elements of a conspiracy claim."). Plaintiff has not alleged a civil conspiracy and dismissal of her ninth cause of action as to the Moving Defendants is therefore proper.

/ / /

IV.     **CONCLUSION**

For the foregoing reasons, the Moving Defendants respectfully request that the Court dismiss the FAC.

Dated this 1st day of July, 2024.

McDONALD CARANO LLP

By:   /s/  *Rory T. Kay*
Rory T. Kay (NSBN 12416)
John A. Fortin (NSBN 15221)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rkay@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

*Attorneys for Defendants Frank Petosa,*
*Ryan Hogan, and Michael Woodside*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1st, 2024 a copy of the foregoing **DEFENDANTS FRANK PETOSA, RYAN HOGAN, AND MICHAEL WOODSIDE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was filed electronically through the Court's CM/ECF system, which causes service upon all counsel registered thereon.

 /s/  *Leah Jennings*
An employee of McDonald Carano LLP