1   Rory T. Kay (NSBN 12416)
    John A. Fortin (NSBN 15221)
2   McDONALD CARANO LLP
    2300 West Sahara Avenue, Suite 1200
3   Las Vegas, Nevada 89102
    Telephone: (702) 873-4100
4   rkay@mcdonaldcarano.com
    jfortin@mcdonaldcarano.com
5
6   *Attorneys for Defendants Frank Petosa, Ryan
    Hogan, Michael Woodside and Aylo Premium Ltd*

7                    **UNITED STATES DISTRICT COURT**

8                        **DISTRICT OF NEVADA**

9

10  MELISSA HUTCHISON aka PHOENIX          Case No. 2:24-cv-00673-GMN-BNW
    MARIE, an individual,,
11                                         **DEFENDANT AYLO PREMIUM LTD'S**
                Plaintiff,                 **MOTION TO DISMISS PLAINTIFF'S**
12                                         **FIRST AMENDED COMPLAINT**
           v.
13                                         **ORAL ARGUMENT REQUESTED**
    ETHICAL CAPITAL PARTNERS, a foreign
14  entity; AYLO PREMIUM LTD., a foreign
    corporation; DM PRODUCTIONS, a foreign
15  entity; DIGITAL PLAYGROUND, a foreign
    entity; MIND GEEK USA
16  INCORPORATED, a foreign entity; MG
    PREMIUM LTD, a foreign entity; DM
17  PRODUCTIONS, a foreign entity; DIGITAL
    PLAYGROUND, a foreign entity; DANNY
18  MARTIN aka DANNY D, an individual;
    FRANK PETOSA an individual; RYAN
19  HOGAN, an individual; MICHAEL
    WOODSIDE, an individual; and DOES 1
20  through 50,,

21              Defendants.

22

23          Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Aylo

24  Premium Ltd, formerly known as MG Premium Ltd and doing business as Digital Playground

25  ("Aylo") hereby moves to dismiss Plaintiff Melissa Hutchison a/k/a Phoenix Marie's ("Plaintiff")

26  First Amended Complaint ("FAC") with prejudice.

27          Rule 12(b)(2) requires dismissal with prejudice because Plaintiff cannot establish personal

28  jurisdiction over Aylo.  Aylo is not "essentially at home" in Nevada such that general jurisdiction

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

can be conferred over it. As for specific jurisdiction, none of Plaintiff's alleged harms arise out of any Nevada or even U.S.-related activity. To the contrary, all of the alleged events in the FAC took place outside of the United States, in Barcelona, Spain, and Berlin, Germany. As such, Plaintiff cannot satisfy her burden of showing that Aylo "purposefully availed" itself of Nevada's laws, "purposefully directed" its alleged activities towards Nevada or that her claims arise out of Aylo's "forum-related activities," as no such activities exist that "relate to" or are the "cause of" Plaintiff's claims.

The FAC should also be dismissed as to Aylo for the independent and additional reason that the express mandatory forum selection clause in the Performer Services Agreement dated October 1, 2023, between Plaintiff and Aylo requires that any disputes or controversies arising out of that agreement be brought exclusively in Cyprus, and not anywhere else.

Finally, and independent of the above two reasons for dismissal, the majority of the causes of action in the FAC also fail to adequately plead essential elements of each claim against Aylo. Plaintiff improperly groups Aylo and the other Defendants together without alleging sufficient facts demonstrating how each Defendant participated in the alleged wrongdoing. Substantively, Plaintiff's Second Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing fails because it is duplicative of Plaintiff's First Cause of Action for Breach of Contract and because Plaintiff cannot allege that Aylo breached terms of the Performer Services Agreement and at the same time assert a claim for breach of the implied covenant of good faith and fair dealing based on Aylo's purported contravention of the intention of that agreement. Plaintiff's Fifth Cause of Action for Intentional Interference with Contractual Relations and Sixth Cause of Action for Intentional Interference with Prospective Advantage fail because Plaintiff does not allege with any specificity which alleged contracts or prospective opportunities were purportedly interfered with by Aylo or how Aylo supposedly interfered with those alleged contracts or opportunities. Plaintiff's Seventh Cause of Action for Intentional Infliction of Emotional Distress fails because it does not contain any factual allegations that Aylo took any action whatsoever to cause Plaintiff's emotional distress; rather, Plaintiff's intentional infliction of emotional distress claim alleges that her emotional distress was caused ***solely*** by the alleged conduct of Defendant Danny Martin ("Danny D.") (who is not

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

employed by or a representative or agent of Aylo). Plaintiff's Eighth Cause of Action for Defamation *Per Se* fails because Plaintiff does not allege any specific defamatory comments attributable to Aylo, or when, where, or to whom they were made. Finally, Plaintiff's Ninth Cause of Action for Civil Conspiracy fails because Plaintiff cannot assert a civil conspiracy claim without alleging a viable underlying tort, and all of Plaintiff's tort claims against Aylo fail. In addition, Plaintiff fails to allege any facts that support a plausible inference that Aylo conspired with any of the Defendants to achieve an unlawful purpose.

For all of these reasons and the reasons detailed below, dismissal of Plaintiff's FAC is proper.

Dated this 23rd day of August, 2024.

McDONALD CARANO LLP

By: /s/ *Rory T. Kay*
Rory T. Kay (NSBN 12416)
John A. Fortin (NSBN 15221)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rkay@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

*Attorneys for Aylo Premium Ltd (formerly known as MG Premium Ltd, and doing business as Digital Playground)*

3

McDONALD ☆ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff alleges[1] that she is an adult performer who, under the name "Phoenix Marie," performs in adult films and attends adult-themed events and expositions.  In this action, Plaintiff asserts nine causes of action, but only asserts seven causes of action against Aylo for: (i) Breach of Contract (ECF No. 9 ¶¶ 99-104), (ii) Breach of the Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 105-109), (iii) Intentional Interference with Contractual Relations (*id.* ¶¶ 121-27); (iv) Intentional Interference with Prospective Business Advantage (*id.* ¶¶ 128-34); (v) Intentional Infliction of Emotional Distress (*id.* ¶¶ 135-44); (vi) Defamation *Per Se* (*id.* ¶¶ 145-59); and (vii) Civil Conspiracy (*id.* ¶¶ 160-66).

This matter mirrors the jurisdictional defects that plagued the Nevada plaintiffs in *Walden* that sought to be heard in the Silver State as opposed to Georgia where the events at issue actually took place.  *See Walden v. Fiore*, 571 U.S. 277 (2014).  Just as the exercise of jurisdiction offended the notions of "fair play and substantial justice" in *Walden*, the exercise of personal jurisdiction over the Aylo here would likewise violate the Fourteenth Amendment's Due Process clause.  Similarly, just as the minors killed in a bus accident France could not hale an American company into court in North Carolina, the actions in this case all purportedly occurred abroad such that there cannot be general jurisdiction over Aylo in Nevada.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011).

Plaintiff simply has no basis to bring this action in Nevada.  Aylo is indisputably not subject to personal jurisdiction in this state.  The declaration filed concurrently with this Motion foreclose any claim that Aylo is "essentially at home" in Nevada such that general jurisdiction can be conferred over them.  Nor did any of Plaintiff's alleged harms arise out of any Nevada or even U.S.-related activity.  To the contrary, all of the alleged events in the FAC took place outside of the United States, with the two key incidents that serve as the foundation for her claims having allegedly occurred in

---

[1]    At the pleading stage, all of Plaintiff's allegations are taken as true but by reciting these allegations, Aylo is not conceding the allegations are, in fact, true.

1   Barcelona, Spain, and Berlin, Germany.  As such, Plaintiff cannot satisfy her burden of showing that

2   Aylo "purposefully directed" its alleged activities towards Nevada or that her claims arise out of

3   Aylo's "forum-related activities," as none exist.  The FAC should be dismissed with prejudice for

4   this reason alone.

5        The Court should also decline to exercise jurisdiction over Plaintiff's claims against Aylo

6   Premium based on a clear and express mandatory forum selection clause in the Performer Services

7   Agreement between Plaintiff and Aylo Premium dated October 1, 2023.  In the Performer Services

8   Agreement (the contract at issue in this action), Plaintiff contractually agreed, *inter alia*, that any

9   disputes or controversies arising out of or regarding that agreement be brought exclusively in

10  Cyprus, and not anywhere else.  Forum selection clauses such as this one are *prima facie* valid, and

11  Plaintiff already conceded in her FAC that the Parties "entered into a valid and enforceable

12  agreement" such that Plaintiff cannot meet her "heavy burden" to invalidate the parties' Cyprus

13  choice of forum.

14       The Court's lack of jurisdiction over Aylo and this dispute are independent reasons to dismiss

15  the FAC with prejudice. However, there are numerous other reasons why the FAC should also be

16  dismissed under Federal Rule of Civil Procedure 12(b)(6).  As a threshold matter, Plaintiff

17  improperly groups all of the Defendants together without alleging facts sufficient to demonstrate

18  how each Defendant participated in each alleged wrongdoing.  As a result, Plaintiff has not plausibly

19  pleaded essential elements of each claim against each of the Defendants, including Aylo.

20       Moreover, each of Plaintiff's causes of action fails to state a claim upon which relief can be

21  granted.  First, Plaintiff's claim for Breach of the Covenant of Good Faith and Fair Dealing (ECF

22  No. 9 ¶¶ 105-109) is duplicative of Plaintiff's claim for breach of contract.  Second, Plaintiff's claims

23  for Intentional Interference with Contractual Relations (*id.* ¶¶ 121-27) and Intentional Interference

24  with Prospective Advantage (*id.* ¶¶ 128-34) are entirely conclusory.  Plaintiff does not allege with

25  any specificity what alleged contracts or opportunities were allegedly interfered with by the Aylo or

26  how Aylo allegedly interfered with those contracts or opportunities.  Third, Plaintiff's claim for

27  Intentional Infliction of Emotional Distress (*id.* ¶¶ 135-44) does not contain any factual allegations

28  that Aylo took any action whatsoever to cause Plaintiff's emotional distress; rather, Plaintiff's claim

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

alleges that her emotional distress was caused **solely** by the alleged conduct of Defendant Danny Martin (who is not employed by or a representative or agent of Aylo). Fourth, Plaintiff's claim for Defamation *Per Se* (*id.* ¶¶ 145-59) fails to allege any specific defamatory or libelous comments attributable to Aylo, or when, where, or to whom they were made. Finally, Plaintiff's claim for Civil Conspiracy (*id.* ¶¶ 160-66) fails because Plaintiff cannot assert a civil conspiracy claim without alleging a viable underlying tort, and, as set forth above, Plaintiff's tort claims against Aylo all fail. Plaintiff also fails to allege any facts supporting a plausible inference that any of the Defendants (including Aylo) conspired with one another to achieve an unlawful purpose. Accordingly, the FAC should be dismissed.

## II.      FACTUAL BACKGROUND

Plaintiff alleges that she is an adult performer who, under the name "Phoenix Marie," entered into written agreements with "Defendants' companies" to perform in adult films and attend adult-themed events and expositions. (ECF No. 9 ¶¶ 29-30). Plaintiff further alleges in her FAC that, in October 2023, Plaintiff traveled to Barcelona to shoot scenes for a project for Defendant Danny D. and Aylo's studio Digital Playground.[2] (*Id.* ¶ 37). During filming, the main actors, including a female with the screen name Zaawaadi, were staying in a residence along with some of the other staff. (*Id.* ¶¶ 38, 43). Plaintiff claims that Danny D.'s partner, Liss, also attended the Barcelona shoot as the makeup artist, production manager, and talent liaison. (*Id.* ¶ 40). At the time of the shoot, Liss was taking lithium for depression. (*Id.* ¶ 42).

During the Barcelona shoot, Zaawaadi had to perform an anal sex scene. (*Id.* ¶ 44). Plaintiff details that she spoke with Zaawaadi prior to the scene and gave Zaawaadi two probiotic pills and two laxative pills. (*Id.* ¶¶ 44-46). Plaintiff alleges that on the final day of shooting, Plaintiff was filming a scene when Liss came out of the house screaming that there was an emergency. (*Id.* ¶¶ 48-49). Plaintiff claims that she ran into the house where Zaawaadi was laying on the couch, shaking violently and screaming that she could not breathe. (*Id.* ¶ 51). Plaintiff then asked Zaawaadi if she

---

[2] Digital Playground does not exist as an entity. Rather, it is a brand named utilized and licensed by Aylo.

had taken any drugs or medicines lately, and Zaawaadi said, "only the 4 pills you gave me." (*Id.* ¶ 55). Zaawaadi was subsequently taken to the hospital by paramedics. (*Id.* ¶¶ 56-57).

Plaintiff alleges that the next day, Danny D. informed Plaintiff that Zaawaadi had overdosed on lithium and was in a medically induced coma. (*Id.* ¶ 65). Danny D. purportedly questioned Plaintiff about lithium and demanded to see the probiotics and laxatives Plaintiff claims she shared with Zaawaadi. (*Id.* ¶ 64). The following day, the attendees of the Barcelona shoot traveled to Berlin for an adult convention. (*Id.* ¶ 72). Supposedly, when Plaintiff arrived at her Berlin hotel, "Aylo executives," including Defendants Petosa and Hogan, "falsely blamed [her] for the lithium poisoning in Barcelona." (*Id.* ¶¶ 75-81).

Plaintiff further alleges that, after she left Berlin, "the Defendants and others" spread unspecified "falsehoods" about Plaintiff "all over the industry." (*Id*. ¶ 87). However, Plaintiff never alleges *what* those purported false statements were, *who* supposedly made the statements, *when* they were made, or to *whom*. Instead, Plaintiff only offers the following vague allegations:

- Adult actress Angela White told Plaintiff that in Berlin, she heard from another actor that "Spain was a shit show, but thankfully the person responsible [i.e. Plaintiff] is not here." (*Id*. ¶ 88).

- An unnamed "external brand sponsor" told Plaintiff that an unspecified "mutual partner" told him to "distance himself from working with [Plaintiff] in the future, as there's something shady going on around her." (*Id.* ¶ 89).

- Adult actor Manuel Ferrara "heard things were going on." (*Id.* ¶ 91).

- Adult actor Ricky Johnson told her "I just heard from [Petosa]. I know there's some drama around [Barcelona]. I know it wasn't anything good because we all know the rumors going around." (*Id.* ¶ 91).

- An unnamed "Las Vegas-based makeup artist" told Plaintiff that another industry makeup artist asked, "do you think she really did it?" (*Id.* ¶ 93).

- In a text conversation between Plaintiff and Melissa Hogan, Defendant Hogan's wife, "it was clear that Ryan Hogan had told his wife about the accusation," but nowhere

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

does Mrs. Hogan reference the alleged accusation or make clear that she knows what it was.  (*Id.* ¶ 94).

- "Defendants and their representatives and executives" have "spread lies in the adult community about [Plaintiff] regarding alcohol and drug abuse, the criminal act of poisoning an individual, and her reputation in the business."  (*Id.* ¶ 146).

- On February 15, 2024, Plaintiff commenced this action in Nevada state court.  On April 5, 2024, the Defendants Frank Petosa, Ryan Hogan, and Michael Woodside removed this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446. (ECF No. 1).  On May 3, 2024, Plaintiff filed her FAC.  (ECF No. 9).  Defendants Frank Petosa, Ryan Hogan, and Michael Woodside moved to dismiss the FAC on July 1, 2024, which is still pending.  (ECF No. 13).

## III.    LEGAL ARGUMENT

For three independent reasons, the Court should dismiss Aylo from this matter: (1) the lack of personal (general or specific) jurisdiction, (2) a mandatory forum selection clause, and (3) failure to plead a claim.

### A.  *Nevada Courts Lack Personal Jurisdiction Over Aylo*

The first independent reason the Court should dismiss this action against Aylo is for lack of personal jurisdiction.  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  It is thus Plaintiff's burden to establish at least one of the "two types of personal jurisdiction: general and specific," for every claim. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 255 (2017).  To satisfy that burden, Plaintiff must make a *prima facie* showing of jurisdictional facts. In determining whether this burden has been satisfied, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

1   plaintiff's pleading burden." *Fiore v. Walden*, 657 F.3d 838, 846-47 (9th Cir. 2011), *overruled on*

2   *other grounds by Walden v. Fiore*, 571 U.S. 277 (2014). "[D]isputed allegations in the complaint

3   that are not supported with evidence or affidavits cannot establish jurisdiction." *Ama Multimedia,*

4   *LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).[3]  Plaintiff cannot meet her burden of showing

5   that Aylo is subject to either general or specific jurisdiction in Nevada.

**1. Aylo is not subject to General Jurisdiction.**

7           General jurisdiction over a foreign corporation exists "only if the corporation's connections

8   to the forum state are so continuous and systematic as to render it essentially at home in the forum

9   State." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (brackets omitted).

10  Where the forum is not a defendant's place of incorporation or principal place of business, general

11  jurisdiction is only possible in "exceptional cases" where the defendant's operations in the forum

12  are "so substantial and of such a nature as to render the corporation at home in that State." *See*

13  *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069

14  (9th Cir. 2015).

15          Plaintiff does not allege any ***facts*** connecting Aylo to Nevada.  Plaintiff does not allege that

16  Aylo is a Nevada corporation or that it maintains its principal place of business in Nevada.  To the

17  contrary, Plaintiff admits that Aylo is a "foreign corporation" (ECF No. 9 ¶ 7).  Indeed, Aylo was

18  incorporated in the Republic of Cyprus where it also maintains its principal place of business, and

19  where Plaintiff served Aylo. (*See* Declaration of Andreas Alkiviades Andreou ("Andreou Decl.") ¶

20  4, attached as **Exhibit A**; Plaintiff's Request for Service Abroad, attached as **Exhibit C**).  Plaintiff's

21  vague and conclusory allegation that Aylo is "doing business in Clark County, Nevada" is false and

22  insufficient.  (ECF No. 9 ¶ 7).  Aylo does not have any operations, offices or employees in Nevada,

23  and Plaintiff does not allege otherwise.  (*See* **Exhibit A** ¶ 5-7).  Just as the Plaintiff's in *Goodyear*

24  could not hale that company into North Carolina based on supposed operations in Nevada, Plaintiff

25  _____

26  [3]      "Where . . . there is no applicable federal statute governing personal jurisdiction, the district
    court applies the law of the state in which the district court sits."  *Schwarzenegger*, 374 F.3d at 800.
27  Because the reach of Nevada's long-arm jurisdictional statute is "coextensive with the outer limits of
    federal due process," the jurisdictional analyses under state law and federal due process are the same.
28  *See, e.g.*, *Abraham v. Agusta, S.P.A.*, 968 F. Supp. 1403, 1407 (D. Nev. 1997).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

cannot obtain a jurisdictional hook based on these allegations over Aylo. *Goodyear*, 564 U.S. at 930 ("Under the sprawling view of general jurisdiction urged by respondents and embraced by the North Carolina Court of Appeals, any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, where its products are distributed.").

Plaintiff's allegation that "[Defendants] sell millions of dollars' worth of pornographic materials in the State of Nevada and attend and promote large conventions in the State of Nevada" (ECF No. 9 ¶ 22) likewise is insufficient to confer general jurisdiction. As detailed below, this allegation improperly lumps all of the Defendants together and, even if true, still does not provide any basis to find that Aylo's contacts with Nevada are so "continuous and systematic" that it is "essentially at home" in Nevada. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017); *Schwarzenegger*, 374 F.3d at 801 (allegations that company purchased cars imported by California entities, had contracts subject to California law, retained a California marketing company, hired a California training company, and maintained website accessible by California residents fell "well short"). As a foreign company, served abroad, without any employees or operations in Nevada, general jurisdiction does not exist here.

### 2.  Aylo is not subject to Specific Jurisdiction.

There is likewise no specific jurisdiction over Aylo. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation" (*Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)), and "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction" (*Bristol-Myers*, 582 U.S. at 262 (citation omitted)). Due process requires a ***direct connection*** between the alleged harm and the defendant's contacts with the forum state. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264; *see also Schwarzenegger*, 374 F.3d at 802 ("claim must be one which arises out of or relates to the defendant's forum-related activities" and "the exercise of jurisdiction must comport with fair play and substantial justice"); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) ("As [plaintiff] does not argue [defendant's] contacts with [the forum] give rise to or relate to her cause of action,

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

specific jurisdiction is not at issue."). While courts must consider "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice[,] . . . the 'primary concern'" in evaluating specific jurisdiction "is 'the burden on the defendant.'" *Bristol-Myers*, 582 U.S. at 265.

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either "purposefully direct [its] activities" toward the forum or "purposefully avail[] [itself] of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods*, 874 F.3d at 1068. Plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If Plaintiff meets that burden, "the burden then shifts to" Aylo "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*.

The "purposeful availment" analysis is most often used in suits sounding in contract and the "purposeful direction" analysis, often referred to as the "effects" test, is most often used in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802; *Axiom Foods*, 874 F.3d at 1069. Here, Plaintiff asserts claims sounding in both contract and tort. But regardless of which test applies, Plaintiff cannot meet her burden of establishing personal jurisdiction under either test.

### a. Aylo did not purposefully avail itself of the privilege of conducting activities in Nevada.

"Purposeful availment" exists when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and in return "submit[s] to the burdens of litigation" in the forum state. *Schwarzenegger*, 374 F.3d at 802; *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).

11

As an initial matter, Plaintiff's FAC concedes that all of the activities at issue occurred outside of the state of Nevada such that her claims do not "relate to" Nevada. *See generally* (ECF No. 9). At best, Plaintiff's allegation that "[Defendants] sell millions of dollars' worth of pornographic materials in the State of Nevada and attend and promote large conventions in the State of Nevada" may be a claim for "relating to" specific jurisdiction. (ECF No. 9 ¶ 22). But the United States Supreme Court cautioned lower courts on relying on such sweeping generalizations for specific jurisdiction "relating to" jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) ("That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum."). The facts in *World-Wide Volkswagen* and *Ford* are inapposite as those matters dealt with product liability issues and Plaintiff's FAC deals with breach of contract and purported intentional torts that were felt by Plaintiff in the forum.

The FAC does not allege any forum-related activities by Aylo, aside from the vague and conclusory allegations discussed above (*supra*, at Section III.A.1), which have no connection whatsoever to Plaintiff's claims and thus cannot be the basis for specific jurisdiction.

Plaintiff did not allege (nor could she) that the Performer Services Agreement was negotiated with Aylo, entered into, or even performed in Nevada—all of the events in question occurred abroad. (*See generally* ECF No. 9, ¶¶ 28, 57; *see also* **Exhibit A**, Andreou Decl., ¶ 5-7 & Performer Services Agreement, attached as **Exhibit B** (Filed Under Seal)). The law is clear, there cannot be purposeful availment under these facts. *See, e.g.*, *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (no purposeful availment where (1) contract was negotiated in England; (2) contract made no reference to U.S. as place for resolution of disputes; and (3) no authorized agents were alleged to performed any part of the contract in California); *Issod v. Diagem Resources Corp.*, 2006 WL 1788374, at *8 (D. Nev. June 26, 2006) (no purposeful availment where agreements governed by Canadian law, and Defendant's obligations were to be performed in Canada and Brazil). The only connection to Nevada is Plaintiff's residency, which is insufficient. *See, e.g.*, *Burger King*, 471 U.S. at 478 ("an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts"); *Davis*, 71 F.4th at 1163 (no purposeful availment despite agreement

1    with Idaho resident where "no evidence that Cranfield sought out Tamarack in Idaho or benefitted

2    from Tamarack's residence in Idaho" and "[n]either the contract's negotiations, terms, nor

3    contemplated consequences establish that Cranfield formed a substantial connection with Idaho.").

4                    **b.  *Aylo did not purposefully direct its conduct to Nevada.***

5              To satisfy the purposeful direction "effect" test, Aylo must have (1) committed an intentional

6    act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

7    suffered in the forum state.  *Axiom Foods*, 874 F.3d at 1069.  None of these elements are satisfied

8    here. First, Aylo did not commit an intentional act expressly aimed at Nevada.  *See Calder v. Jones*,

9    465 U.S. 782, 788-89 (1984) (recognizing that the intentional tort of libel "was the focal point both

10   of the story and of the harm suffered" and the "brunt" of the injury occurred in California by a

11   California plaintiff).  The FAC does not allege—nor could it—that any of Plaintiff's alleged harms

12   arose out of any Nevada or even U.S.-related activity.  Again, all of the conduct Plaintiff alleges

13   Aylo committed in the FAC took place outside of the United States.  Plaintiff's residency cannot be

14   the only connection with Nevada.  *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[A] defendant's

15   relationship with a plaintiff … standing alone is an insufficient basis for jurisdiction."); *Bristol-*

16   *Myers*, 582 U.S. at 265 (same).  As the United States Supreme Court has explained, even Aylo's

17   knowledge that Plaintiff resided in Nevada is not enough for this Court to exercise personal

18   jurisdiction over Aylo.  *Walden*, 571 U.S. at 286 (defendant's actions in another location "did not

19   create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs

20   whom he knew had Nevada connections").  This is because providing this type of jurisdictional hook

21   would "obscure the reality that none of petitioner's challenged conduct had anything to do with

22   Nevada itself."  *Id*.  The *Walden* analysis is nearly identical to the analysis in this matter such that

23   this Court should enter the same result—dismissal.

24                    **3.     Plaintiff's claims do not arise from forum-state activities**.

25             Dovetailing with the lack of purported harm felt in Nevada, Plaintiff cannot satisfy prong

26   two, demonstrating her harms "arise[] out of or relate to" Aylo's "forum related activities," as there

27   indisputably are no "forum related activities" by Aylo alleged in the FAC.  (*See generally* ECF No.

28   9).  The only connection this case has to Nevada is Plaintiff's alleged residence, which as detailed

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    above, is insufficient.  *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802 ("It may be true that Fred Martin's

2    intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may have

3    known that Schwarzenegger lived in California. But this does not confer jurisdiction"); *Goodyear*

4    *Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Because the episode-in-suit, the bus

5    accident, occurred in France, and the tire alleged to have caused the accident was manufactured and

6    sold abroad, North Carolina courts lacked specific jurisdiction to adjudicate the controversy.");

7    *Ponder v. Wild*, 2018 WL 473003, at *3 (D. Nev. Jan. 18, 2018) ("[T]he amended complaint does

8    not clearly demonstrate a *prima facie* case of personal jurisdiction over defendant … all of the other

9    allegedly defamatory conduct appears to have occurred outside the state of Nevada.") (denying

10   motion to amend complaint).[4]   Thus, Plaintiff cannot satisfy the second prong of the specific

11   jurisdiction analysis, and dismissal is warranted.

> **4.**      ***Jurisdiction cannot be reasonable because Plaintiff cannot meet her burden under the first two prongs of the specific jurisdiction test.***

14         Because Plaintiff cannot satisfy the first two prongs, the Court need not assess whether the

15   exercise of jurisdiction over Aylo would be reasonable under the third prong.  However, even if the

16   Court did reach the third prong of this analysis, the exercise of jurisdiction over Aylo—a foreign

17   entity who is not alleged to have committed any intentional acts in or directed towards Nevada—

18   would be, without question, entirely unreasonable and contrary to law.  *See, e.g.*, *Shull v. Univ. of*

19   *Queensland*, 2019 WL 3502889, at *4 (D. Nev. July 31, 2019) ("It would be unfair and unreasonable

20   under the circumstances of this case to force the defendants to be haled into court" in Nevada where

21   "defendants are not connected to Nevada in any jurisdictionally meaningful way" and "[n]othing

22   could have suggested to the defendants that they would later be expected to defend themselves in a

23   Nevada court.").

24   / / /

25

---

26   [4]      Plaintiff's vague allegations that an unnamed "local Las Vegas-based makeup artist" allegedly
27   told Hutchison that another unnamed "industry makeup artist" asked "do you think she did it?" is
     likewise insufficient to confer specific jurisdiction over Aylo, as it fails to show any intentional act
28   aimed at Nevada by Aylo.  (ECF No. 9 ¶ 93).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**5.**     ***Plaintiff failed to demonstrate that Nevada courts possess personal jurisdiction over Aylo.***

In sum, Plaintiff failed to meet her *prima facie* burden that it comports with the notions of "fair play and substantial justice" for this Court to exercise personal jurisdiction over Aylo, for acts that occurred in a foreign country, simply because Plaintiff resides in Nevada.  Dismissal with prejudice is therefore proper.

**B.   *The Court Should Dismiss Aylo From This Action Because of the Binding Forum Selection Clause in the Parties' Valid and Enforceable Contract***

The Court should also decline to exercise jurisdiction over Aylo based on the clear and express mandatory forum selection clause in the Performer Services Agreement between Plaintiff and Aylo dated October 1, 2023.   (*See* **Exhibit B**, Performer Services Agreement).   In the Agreement, Plaintiff agreed, *inter alia*, that any disputes or controversies arising out of or regarding that agreement be brought exclusively in Cyprus, and not anywhere else:

> This Agreement and any issue, dispute or controversy hereunder shall be governed by and construed in accordance with the internal laws of the Republic of Cyprus without giving effect to any choice or conflict of law provision or rule (whether of the Republic of Cyprus or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the Republic of Cyprus. **The Parties hereby consent to the exclusive jurisdiction and venue of courts in the Republic of Cyprus for all issues, disputes or controversies arising out of the present Agreement.**

(*Id.*, § 11.11); *see, e.g.*, *Fragrance House, Inc. v. Hanjin Shipping Co., Ltd.*, 2014 WL 8708237, at *3 (C.D. Cal. Dec. 11, 2014) ("the Court may (and must) consider evidence attesting to the existence and terms of the forum selection clause" on a motion to dismiss based on *forum non conveniens*"). The parties' express agreement to litigate their disputes in Cyprus is valid and should be enforced as to all of Plaintiff's claims against Aylo.  Indeed, Plaintiff conceded that the Parties entered into a "valid and enforceable agreement" such that Plaintiff admitted that the forum selection clause is enforceable. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings . . . are considered judicial admissions binding on the party who made them.").  Thus, the parties' express agreement to litigate their disputes in Cyprus is valid and should be enforced as to all of Plaintiff's claims against Aylo.

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966
McDONALD CARANO

Indeed, all of Plaintiff's claims against Aylo comprise a controversy "arising out of" the Performer Services Agreement and are thus governed by this mandatory forum selection clause. There can be no serious dispute that Plaintiff's first and second causes of action for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing fall within the scope of the forum selection clause. Plaintiff's remaining causes of action against Aylo—for Interference with Contractual Relations, Interference with Prospective Business Advantage, Intentional Infliction Of Emotional Distress, Defamation, and Civil Conspiracy—must also be heard in Cyprus because they all also directly "arise out of" the business relationship between Plaintiff and Aylo created by the Performer Services Agreement. The only basis for any relationship between Plaintiff and Aylo was the Performer Services Agreement and all of the alleged conduct in the FAC occurred during the course of that contractual relationship. The broad language here unquestionably evidences that the parties intended for tort claims "arising out of" the parties' business relationship to be encompassed by the forum selection clause. *See, e.g.*, *Cedars-Sinai Med. Ctr. v. Global Excel Mgm't, Inc.*, 2009 WL 7322253, at *5 (C.D. Cal. Dec. 30, 2009) ("[C]lauses governing claims 'arising out of …' a contract have broader reach"); *Siren, Inc. v. Firstline Sec., Inc.*, 2006 WL 3257440, at *7 (D. Ariz. 2006) (intentional interference with contractual relations claim subject to forum selection clause because "it bears upon … the relations among the parties."); *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444-45 (5th Cir. 2008) (applying forum selection clause to tort claims where "all arise out of [defendant's] contractual relationship with [plaintiff].").

### C. *The FAC Fails to State a Claim Against Aylo.*

If the Court disagrees with the forum selection clause issue and concludes that it possess personal jurisdiction over Aylo, dismissal is still proper as Plaintiff failed to state a claim for relief.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim[s]" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (quoting

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1  *Twombly*, 550 U.S. at 570).  Courts routinely dismiss claims "where the complaint lacks a cognizable

2  legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

3  *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Courts also "need not . . . accept as true allegations

4  that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State*

5  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended*, 275 F.3d 1187 (9th Cir. 2001).

6          **1.  *Plaintiff's Claims Suffer From Improper Group Pleading.***

7          All of Plaintiff's claims should be dismissed because she fails to differentiate among any of

8  the Defendants or allege sufficient facts demonstrating how each Defendant, including Aylo,

9  engaged in any of the alleged conduct at issue.  Instead, Plaintiff lumps all of the Defendants together

10  and fails to distinguish her allegations among them.

11          To properly assert her claims against multiple defendants, Plaintiff "must allege the basis of

12  [her] claim against ***each defendant*** to satisfy Federal Rule of Civil Procedure 8(a)(2)."  *Bertsch v.*

13  *Discover Fin. Servs.*, 2020 WL 1170212, at *3 (D. Nev. Mar. 11, 2020).  Plaintiff has failed to do

14  so, and her "[i]mproper lumping" of Defendants requires dismissal of the FAC.  *See, e.g.*, *Duenas v.*

15  *Wal-Mart Stores E., LP*, 2022 WL 4624226, at *1 (D. Nev. Sept. 30, 2022) ("[C]omplaints that lump

16  defendants together without adequately distinguishing claims and alleged wrongs among the

17  defendants are improper") (granting motion to dismiss); *Bertsch*, 2020 WL 1170212, at *3 (granting

18  motion to dismiss: "nowhere does Plaintiff identify any actions or omissions attributable to a

19  particular Defendant."); *McHenry v. Renne*, 84 F.3d 1172, 1175 (9th Cir. 1996) (dismissing claims

20  that "vaguely refer[red] to 'defendants' or 'other responsible authorities'"); *Rust v. Borders*, 2019

21  WL 12375434, at *5 (C.D. Cal. Mar. 17, 2019) ("Plaintiff's use of terms such as 'Defendant[]' [or]

22  'Defendants[]' …without identifying the specific Defendant or Defendants assertedly involved in

23  the alleged wrongdoing is improper.").

24          The undifferentiated allegations are especially problematic here, since Plaintiff never

25  distinguishes how any of the Defendants had anything to do with the events alleged in the FAC.

26  (*See generally* ECF No. 9).  Thus, it is impossible to tell what alleged wrongful conduct Plaintiff

27  contends that Aylo engaged in.

28

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Plaintiff cannot justify her undifferentiated "group" pleading through conclusory alter ego and agency allegations. (ECF No. 9 ¶¶ 17-21). These allegations consist solely of legal conclusions, such as that the corporate Defendants "constitute the alter egos of each other" or were "Plaintiff's joint employers by virtue of a joint enterprise." *Id.* Such allegations are insufficient. *See, e.g.*, *Gowen v. Tiltware LLC*, 2009 WL 1441653, at *5 (D. Nev. May 19, 2009), *aff'd*, 437 F. App'x 528 (9th Cir. 2011) ("[C]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each."); *Horton v. NeoStrata Co. Inc.*, 2016 WL 11622008, at *3 (S.D. Cal. Nov. 22, 2016) (improper "group pleading" where "Plaintiff has not pled any facts that, accepted as true, could establish the elements of alter ego liability, and has not presented evidence to the Court that proves that any of the Defendants were under the direction and/or control of the others"). For this reason alone, all of Plaintiff's claims should be dismissed.

### 2.   *Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails.*

As discussed above, Plaintiff's claim for Breach of the Covenant of Good Faith and Fair Dealing must be heard in Cyprus. However, even if the Court were to consider this cause of action action, it fails to state a claim.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) the existence of a contract between the parties; (2) that defendants owed a duty of good faith to the plaintiff; (3) that the defendant acted in a manner that was unfaithful to the purpose of the contract, and (4) that the plaintiff's justified expectations under the contract were denied. *Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019). Plaintiff alleges that Aylo breached the duty of good faith and fair dealing implied into the Performer Services Agreement because it "deliberately contravened the intention and spirit of [the Performer Services Agreement]" when "[Aylo] terminated the relationship" between Plaintiff and Aylo. ECF No. 9 ¶ 107. However, this is the ***exact same conduct*** that Plaintiff alleges constituted a breach of the Performer Services Agreement. *See id.* ¶ 102 ("breached the agreement by improperly terminating [Plaintiff]"). A claim alleging breach of the implied covenant of good faith and fair dealing "cannot be based on the same

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

conduct establishing a separately pled breach of contract claim." *See, e.g.*, *Stebbins*, 2019 WL 281281, at *2 (dismissing breach of implied covenant claim). This is because, unlike a traditional breach of contract claim, a claim for breach of the implied covenant of good faith and fair dealing must allege that "the terms of a contract are ***literally complied with*** but one party to the contract deliberately contravenes the intention of the contract." *Ruggieri v. Hartford Ins. Co. of the Midwest*, 2013 WL 2896967, at *3 (D. Nev. June 12, 2013). Thus, Plaintiff's allegations "that [Aylo] violated the actual terms of a contract" are "incongruent with this cause of action and insufficient to maintain a claim." *Id.*; *Stebbins*, 2019 WL 281281, at *3 (same).

### 3.  *Plaintiff's Claim for Interference with Contractual Relations Fails.*

To state a claim for intentional interference with contractual relations, a plaintiff must allege: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *J. J. Indus. LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003); *Keating v. Gibbons*, 2010 WL 11594814, at *7 (D. Nev. Mar. 26, 2010). "[M]ere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *J. J. Indus. LLC*, 71 P.3d at 1268.

Plaintiff does not allege the existence of any particular contract that Aylo allegedly interfered with; nor does Plaintiff allege what Aylo did to purportedly interfere. (*See generally* ECF No. 9). Plaintiff only offers a vague and conclusory allegation that Aylo "disrupted" her "contractual relationships" with unnamed "customers and representatives in the adult industry and other endeavors outside of the industry, i.e. conventions, other promotional events, etc." (*Id.* ¶ 122). This is insufficient. *See, e.g.*, *Image Online Design, Inc. v. Internet Corp. for Assigned Names and Numbers*, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013) (dismissing claim where plaintiff "has not alleged any facts identifying the particular contracts, the actual disruption of these contracts, or any actual damage"; plaintiff "must allege actual interference with actual contracts, such that the result is a specific breach, not merely general damage to the business."); *S. Cal. Elec. Firm v. So. Cal. Edison Co.*, 2023 WL 2629893, at *12 (C.D. Cal. Jan. 10, 2023) (dismissing claim where

19

"allegations fail to identify a specific contract, the parties to the contract … or the substance and date of the contract") (collecting cases).

### 4. *Plaintiff's Claim for Intentional Interference with Prospective Economic Advantage Fails.*

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege (1) a prospective contractual relationship between the plaintiff and a third party; (2) that the defendant knew of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1174 (D. Nev. 2016); *Boskovich v. Nye Cnty.*, 2022 WL 2481636, at *2 (D. Nev. July 5, 2022). Plaintiff's claim fails for multiple reasons. (*See* ECF No. 9 ¶¶ 128-34).

First, to establish the requisite "intent to harm" a plaintiff must allege that "the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable." *Matthys v. Barrick Gold of N. Am., Inc.*, 2020 WL 7186745, at *4 (D. Nev. Dec. 4, 2020). However, Plaintiff does not allege any such facts. Instead, she only alleges in conclusory fashion that "Defendants intended to harm [Plaintiff] by preventing these relationships." (ECF No. 9 ¶ 131). This is insufficient. *See, e.g.*, *Kraja*, 202 F. Supp. 3d at 1174-75 (dismissing where "complaint does not plausibly allege that [defendant] intended to harm [plaintiff]"); *Song v. MTC Fin., Inc.*, 2021 WL 1601085, at *6-7 (D. Nev. Apr. 23, 2021) (dismissing claim where "no plausible allegation that defendants knew about any *specific* prospective relationship or had an intent to harm said relationship").

Second, to sufficiently allege this claim, "it is essential that the plaintiff plead facts showing that defendant interfered with plaintiff's relationship **with a particular individual**." *Matthys*, 2020 WL 7186745, at *4. However, Plaintiff only vaguely alleges that "Defendants"—not Aylo specifically—interfered with Plaintiff's "prospective contractual relationship" between Plaintiff and unnamed "third-party companies both related and unrelated to the adult industry." (ECF No. 9 ¶ 129). But "[g]eneral allegations that the plaintiff had ongoing expectations in continuing economic relationships … is insufficient." *Matthys*, 2020 WL 7186745, at *4; *NLRK, LLC v. Indoor Ag-Con,*

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*LLC*, 2022 WL 293252, at *5 (D. Nev. Jan. 31, 2022) (dismissal due to failure "to allege a specific relationship or a specific prospective customer relationship that NLRK allegedly interfered with."). Plaintiff also fails to allege that any of the Defendants, including Aylo, were specifically aware of any of these (unidentified) prospective relationships. *See, e.g.*, *Song*, 2021 WL 1601085, at *6-7.

Third, Plaintiff fails to allege "how [Aylo's] actions *actually interfered* with a prospective economic advantage," including "facts to show actual interference by [Aylo]." *Boskovich*, 2022 WL 2481636, at *2 (emphasis in original). Plaintiff also does not allege "actual harm," *i.e.* that she "would have been awarded the contract but for [Aylo's] interference." *Matthys*, 2020 WL 7186745, at *5.

Plaintiff fails to offer any facts in support of this cause of action; all she offers are labels and legal conclusions. This claim should be dismissed. *See, e.g.*, *Matthys*, 2020 WL 7186745, at *5 (granting motion to dismiss where complaint "does little more than offer labels and legal conclusions and reiterate the statutory elements without providing facts to support the elements of the claim.").[5] Dismissal of Plaintiff's sixth cause of action is therefore proper.

### 5. *Plaintiff's Intentional Infliction of Emotional Distress Claim Fails.*

The elements of an intentional infliction of emotional distress ("IIED") claim are: (1) extreme and outrageous conduct with either the intention of, or disregard for, causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual or proximate causation. *Lorador v. Veseli*, 2010 WL 11579726, at *1 (D. Nev. Feb. 25, 2010). "Extreme and outrageous conduct" is "outside all possible bounds of decency" and is regarded as "utterly intolerable" in a civilized community. *Schoenle v. GSL Props., Inc.*, 2011 WL 2600437, at *4 (D. Nev. June 29, 2011). The plaintiff's emotional distress "must be so severe and of such intensity that

---

[5]    Plaintiff's allegations that "Aylo and executives" "demoted [Plaintiff's] material" on "high-traffic websites that Aylo controls, like Brazzers and Pornhub" and "untagged her from all of her Brazzers videos on Pornhub" (ECF No. 9 ¶¶ 95-96), cannot form the basis for her tortious interference claims. A party cannot tortiously interfere with its own contracts and/or business relationships. *See, e.g.*, *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1195 (D. Nev. 2006) ("In Nevada, a party cannot, as a matter of law, tortuously interfere with its own contract."); *Singman v. NBA Props., Inc.*, 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014) (same).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1   no reasonable person could be expected to endure it." *Id.*  Plaintiff's seventh cause of action fails to

2   meet these requirements.  (*See* ECF No. 9 ¶¶ 135-44).

3         As discussed above, the FAC fails to differentiate between the alleged conduct of the various

4   Defendants and improperly lumps their alleged conduct together.  And as for this cause of action,

5   the FAC does not contain any factual allegations that Aylo took any action whatsoever to cause

6   Plaintiff's emotional distress, let alone that such conduct was extreme or outrageous, or that they did

7   anything knowingly or intentionally.  (*Id.*).  To the contrary, Plaintiff's IIED claim alleges that her

8   emotional distress was caused **solely** by the alleged conduct of Danny D.  (*Id.*).  Plaintiff's IIED

9   claim alleges only that she suffers from severe emotional distress because Danny D. (not any of

10  Aylo) "forced" Plaintiff to complete the sex scene that was being filmed after the emergency incident

11  involving Zaawaadi, despite her requests that they continue the scene another time.  (*Id.* ¶¶ 136-

12  138).  Plaintiff further alleges that she suffers from "severe emotional distress" that "was caused by

13  the conduct of Danny D."  (*Id.* ¶¶ 141-142).  None of these allegations have anything to do with

14  Aylo or its alleged conduct.[6]

15        Putting aside the fact that the FAC is devoid of any specific allegations concerning Aylo,

16  Plaintiff also fails to allege that she suffers from the requisite level of emotional distress sufficient

17  to assert an IIED claim.  Plaintiff alleges that she suffers from "severe emotional distress" in the

18  form of "anxiety, panic attacks, sleepless nights, and sexual dysfunction[.]"  (*Id.* ¶¶ 141).  But the

19  law is clear that "[i]nsomnia and general physical or emotional discomfort are insufficient."

20  *Lorador*, 2010 WL 11579726, at *1; *Warren v. Tree*, 2024 WL 147787, at *2 (D. Nev. Jan. 11,

21  2024).  Dismissal of Plaintiff's seventh cause of action is therefore proper.

22

23

---

24  [6]      Plaintiff alleges in passing "Danny D. and other defendants covered up the true source of

25  Zaawaadi's lithium overdose by publicly blaming [Plaintiff] for the criminal act of poisoning another person, refusing to conduct even the most cursory investigation into the shoot, and perpetuating the rumor throughout the industry so she was blackballed and outcasted."  (ECF No. 9  ¶ 139).  Even

26  assuming the truth of these allegations, such statements hardly constitute "extreme and outrageous

27  conduct" sufficient to state a claim for IIED.  *See, e.g.*, *Schoenle*, 2011 WL 2600437, at *4 (rumor accusing plaintiff of intimate relations with co-workers "[did] not rise to the level of 'extreme or

28  outrageous'").

### 6. *Plaintiff's Defamation Claim Fails.*

The elements required of Plaintiff's defamation claim are (1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting actual malice; and (4) actual or presumed damages. *Boskovich*, 2022 WL 2481636, at *3. A plaintiff must plead these elements with "factual specificity" in order to withstand a motion to dismiss, which requires a plaintiff to identify what the alleged defamatory statements consisted of, who made the alleged defamatory statements, to whom the statements were made, and when the statements were made. *See, e.g.*, *Ponder*, 2018 WL 473003, at *3; *see also Boskovich*, 2022 WL 2481636, at *3 n.35 (defamation claim must list "the precise statements alleged to be false and defamatory, who made them[,] and when."). Plaintiff's eighth cause of action does not meet these requirements. (*See* ECF No. 9 ¶¶ 145-59).

The FAC is devoid of any specific defamatory or libelous comments attributable to Aylo, or when, where, or to whom they were made. The FAC only vaguely alleges that "the Defendants and others spread falsehoods about [Plaintiff] all over the industry" (*id*. ¶ 87) and that "Defendants and their representatives and executives have spread lies in the adult community about [Plaintiff] regarding alcohol and drug abuse, the criminal act of poisoning an individual, and her reputation in the business" (*id*. ¶ 146). These allegations are insufficient to state a claim for defamation. *See, e.g.*, *Boskovich*, 2022 WL 2481636, at *4 (dismissing claim "[b]ecause it remains unclear to the court from the face of Boskovich's second-amended complaint which defamatory statements she believes Arabia made"); *Ponder*, 2018 WL 473003, at *3 ("vague and conclusory allegations" insufficient where "[n]one of plaintiff's allegations … describe a defamatory statement that was made, who it was made by, to whom it was made, and when the statement was made"); *Blank v. Hager*, 360 F. Supp. 2d 1137, 1160 (D. Nev. 2005), *aff'd*, 220 F. App'x 967 (9th Cir. 2007) (dismissing defamation claim that failed to identify when and to whom statements were made).

### 7. *Plaintiff's Civil Conspiracy Claim Fails.*

"Conspiracy is not an independent cause of action in and of itself, but must be premised on an intentional tort." *Rivercard, LLC v. Post Oak Prods., Inc.*, 2013 WL 1908315, at *4 (D. Nev. May 16, 2013). To state a claim for civil conspiracy, the complaint must allege (1) formation and

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

23

operation of the conspiracy; (2) wrongful act(s) done pursuant thereto; and (3) damage resulting from such act(s).  *Id.*  Plaintiff's claim fails these requirements.  (*See* ECF No. 9 ¶¶ 160-66).

Plaintiff alleges in conclusory fashion that "Defendants" conspired "to harm [Plaintiff] … to make [Plaintiff] the scapegoat for the bad acts of Danny D." (*Id.* ¶ 162).  Plaintiff's conspiracy claim fails for multiple reasons.  First, Plaintiff cannot assert a conspiracy claim without alleging a viable underlying tort, as conspiracy is not actionable in and of itself.  Because, as set forth above, there are no valid underlying claims, the civil conspiracy claim fails.  *See, e.g.*, *Friedman v. U.S.*, 2019 WL 121965, at *5 (D. Nev. Jan. 7, 2019) (civil conspiracy claim dismissed where plaintiff "ha[d] not alleged plausible claims" for underlying torts); *Rivercard*, 2013 WL 1908315, at *5 ("[B]ecause the underlying tort claims fail, so does plaintiff's claim for civil conspiracy").

Second, Plaintiff has not pled any facts that support a plausible inference that Aylo conspired any of the other Defendants to achieve an unlawful purpose.  Plaintiff's underlying tort claims are directed at all of the Defendants, with no specific allegations as to what the purported co-conspirators did to further any purported conspiracy.  *See, e.g.*, *Daria v. Hurly*, 2015 WL 5736667, at *5 (N.D. Cal. Oct. 1, 2015) (no claim where plaintiff "alleges that all Defendants have committed the underlying torts against her" and failed to "allege specific action on the part of each defendant that corresponds to the elements of a conspiracy claim.").  Plaintiff has not alleged a civil conspiracy and dismissal of her ninth cause of action as to Aylo is therefore proper.

## III.    CONCLUSION

For the foregoing reasons, Aylo respectfully requests that the Court dismiss the FAC.

Dated this 23rd day of August, 2024.

McDONALD CARANO LLP


By: /s/  *Rory T. Kay*
Rory T. Kay (NSBN 12416)
John A. Fortin (NSBN 15221)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rkay@mcdonaldcarano.com
jfortin@mcdonaldcarano.com

*Attorneys for Aylo Premium Ltd (formerly known as MG Premium Ltd, and doing business as Digital Playground)*

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of August, 2024, a true and correct copy of **DEFENDANT AYLO PREMIUM LTD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By:  /s/ Leah Jennings
An employee of McDonald Carano LLP