UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MELISSA HUTCHISON,<br><br>　　　　　　　　Plaintiff,<br>vs.<br><br>ETHICAL CAPITAL PARTNERS, *et al.*,<br><br>　　　　　　　　Defendants. | Case No.: 2:24-cv-00673-GMN-BNW<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

　　　　Pending before the Court are two Motions to Dismiss and a Motion to Seal.  The first Motion to Dismiss, (ECF No. 13), is filed by Defendants Frank Petosa, Ryan Hogan, and Michael Woodside ("the Moving Defendants").  Plaintiff Melissa Hutchison filed a Response, (ECF No. 26), to which the Moving Defendants filed a Reply, (ECF No. 31).  Also pending before the Court is a Motion to Dismiss, (ECF No. 27), filed by Defendant Aylo Premium Ltd.  Plaintiff filed a Response, (ECF No. 38), to which Aylo filed a Reply, (ECF No. 40).  Aylo also filed a Motion to Seal portions of Exhibit B attached to its Motion to Dismiss, (ECF No. 29).

　　　　Because the Court lacks personal jurisdiction over the Moving Defendants and Aylo, the Court **GRANTS** Defendants' Motions to Dismiss.  The Court also **GRANTS in part** Aylo's Motion to Seal.

**I.　　　　BACKGROUND**

　　　　This case arises out of Plaintiff's reputational harm in the adult film industry after Defendants allegedly spread falsehoods about her involvement with an on-shoot medical emergency. (*See generally* First Am. Compl. ("FAC"), ECF No. 9).  Plaintiff, also known as Phoenix Marie, is an adult performer who has entered into numerous agreements with the Defendants' companies to perform in adult films and attend events. (*Id.* ¶¶ 29–30).

　　　　In October 2023, Plaintiff traveled to Barcelona to shoot scenes with actor and director Danny D. (*Id.* ¶¶ 37–39).  The actors and staff stayed in the same residence. (*Id.*).  A younger

actress involved with the shoot, Zaawaadi, ingested three pills of Imodium before the shoot, which Plaintiff warned could be harmful. (*Id.* ¶¶ 44–45). Plaintiff offered her over-the-counter supplements, two probiotic pills and two homeopathic laxative pills, to help to counter the ingestion of the Imodium pills. (*Id.* ¶¶ 46–47). Separately, Danny D.'s partner Liss, who was involved with shoot production, disclosed to Plaintiff that she brought lithium on set because she was taking it for her depression. (*Id.* ¶¶ 41–42).

Later, while the actors were filming a scene, Liss came out of the house yelling, "Emergency, Emergency! She can't breathe." (*Id.* ¶ 49). Plaintiff, who had Emergency Medical Technician training, ran into the house to see Zaawaadi lying on the couch, shaking violently and screaming that she couldn't breathe. (*Id.* ¶ 51). Plaintiff yelled for someone to call an ambulance and administered emergency care. (*Id.* ¶¶ 52–54). After a delay, Danny D. permitted an ambulance to be called. (*Id.* ¶ 56). When the paramedics arrived, Zaawaadi asked Plaintiff to travel with her in the ambulance, but Danny D. grabbed Plaintiff and forced her to finish shooting the scene, even though Plaintiff pleaded to shoot the scene another time. (*Id.* ¶¶ 57–58). In contradiction to company policies, Plaintiff was forced to have sex despite repeatedly saying no. (*Id.* ¶ 60).

The next day, Danny D. told Plaintiff that Zaawaadi had overdosed on lithium and was in a medically-induced coma. (*Id.* ¶ 65). Plaintiff asked Liss if Zaawaadi ingested her lithium, but Liss denied that she was taking lithium, despite having her pills on the counter in a common area of the house. (*Id.* ¶ 66). Plaintiff realized that Danny D. and Liss intended to blame Zaawaadi's lithium reaction on her, and when she suggested that everyone get their blood tested for the presence of lithium, they refused. (*Id.* ¶¶ 67–71).

After Barcelona, everyone at the shoot was required to fly to Berlin to attend an adult convention. (*Id.* ¶ 72). When she arrived at the hotel, she was told that Aylo Executives, Defendants Petosa and Hogan, were waiting to speak with her. (*Id.* ¶¶ 75–76). They verbally

attacked her, patronizingly said that they felt she hadn't dealt with the death of her daughter in 2019, falsely accused her of depression and related alcohol and substance abuse, and blamed her for the lithium poisoning in Barcelona. (*Id.* ¶¶ 77–81). Plaintiff proactively went to a clinic and tested negative for lithium. (*Id.* ¶ 83).

Defendants spread these falsehoods all over the industry, damaging Plaintiff's reputation and alienating her from her friends and colleagues. (*Id.* ¶ 87). At a show in Los Angeles, Plaintiff was removed from the signing booth, and co-stars acknowledged hearing the rumors. (*Id.* ¶¶ 90–91). Not long after, she began being blacklisted from the industry, and makeup artists in Los Angeles refused to work with her. (*Id.* ¶ 93). The high-traffic adult content websites owned by Defendant Aylo began demoting her material, which cost her a loss of viewing and income. (*Id.* ¶ 95). Aylo also untagged her from certain videos, which further made her content disappear from search results. (*Id.* ¶ 96). As of the date of the FAC, Plaintiff alleges that she has lost more than $1.7 million in revenue because of Defendants' interference with her videos and sites. (*Id.* ¶ 98).

Plaintiff brings claims against Defendant Aylo for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 99–109). She also brings claims for sexual battery and battery against Danny D., and five claims against all Defendants for (1) intentional interference with contractual relations, (2) intentional interference with prospective business advantage, (3) intentional infliction of emotion distress, (4) defamation, and (5) conspiracy. (*Id.* ¶¶ 110–166). Defendants Frank Petosa, Ryan Hogan, and Michael Woodside ("the Moving Defendants"), move to dismiss the claims against them, as does Defendant Aylo.

## II.        LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When a 12(b)(2) motion is based on written materials, rather than an evidentiary

hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand [a] motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In determining whether personal jurisdiction exists, courts take the uncontroverted allegations in a complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* NRS § 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise[ ] out of" or "relate[ ] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.*

### III.  DISCUSSION

The Moving Defendants and Aylo move to dismiss for lack for personal jurisdiction, or, in the alternative, failure to state a claim. Because the Court agrees that it lacks personal jurisdiction, it does not reach the issue of failure to state a claim.

## A. Personal Jurisdiction over the Moving Defendants

Plaintiff contends that the Court has specific jurisdiction over the Moving Defendants. (Resp. to MD Mot. Dismiss 12:5–13:2). Specific jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Specific jurisdiction must arise out of "contacts that the 'defendant himself' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).

Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*

Courts typically use a "purposeful direction test" for claims sounding in tort "where the alleged conduct took place outside the forum state." *Strayer v. Idaho State Patrol*, No. 21-cv-35247, 2022 WL 685422, at *2 (9th Cir. Mar. 8, 2022); *see also Schwarzenegger*, 374 F.3d at 802. This test analyzes whether the defendant "(1) committed an intentional act, (2) expressly

aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803.

Plaintiff brings tort claims against the Moving Defendants for intentional interference with contractual relations, intentional interference with prospective business advantage, intentional infliction of emotional distress, ("IIED"), defamation, and conspiracy, so the Court applies the purposeful direction test. (*See* FAC ¶¶ 121–166); *see also Caruth v. Int'l Psychoanalytical Ass'n.*, 59 F.3d 126, 128 n.1 (9th Cir. 1995) (applying the purposeful direction analysis to a case involving defamation, intentional interference with business relations, and intentional infliction of emotional distress). However, Plaintiff's intentional interference with contractual relations alleges only that Aylo, not any of the Moving Defendants, intentionally disrupted her business relationships. (FAC ¶¶ 121–127). Thus, the Court will not consider this as an "intentional act" for purposes of the Moving Defendants' jurisdictional analysis.

Beginning with the first part of the test, the intentional acts allegedly committed by Defendants are their defamatory statements made with the intention of interfering with Plaintiff's business relationships and perpetuating rumors throughout the industry. Plaintiff alleges that when she arrived in Berlin to attend an adult convention after the incident in Barcelona, Defendant Woodside told her that Aylo Executives Frank Petosa and Ryan Hogan were waiting for her. (*Id.* ¶ 75). When she went to speak with them, they "verbally attacked her" as part of a "prolonged smear campaign against her as part of a coverup for Barcelona." (*Id.* ¶ 77). After she left Berlin, the Defendants "spread falsehoods about Hutchison all over the industry, immediately damaging her reputation and alienating her." (*Id.* ¶ 87).

Defendants argue that they did not expressly aim their conduct at Nevada, because all conduct alleged by Plaintiff took place outside of the United States. (MD Mot. Dismiss 11:2–9). Plaintiff responds that Defendants sell pornographic materials in Nevada and promote large

conventions there. (Resp. to MD Mot. Dismiss. 17:23–26).  She also mentions additional contacts in her Response brief in which Moving Defendants visit Nevada for work protocols every few months, shoot live shows, and attend parties. (*Id.* 18:2–14).

Express aiming requires "something more" than "a foreign act with foreseeable effects in the forum state." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  The requisite "something more" for purposeful direction involves "express aiming at the forum state," or in other words, "targeting" the forum state. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156–57 (9th Cir. 2006) (finding no specific personal jurisdiction where defendant's actions lack "individualized targeting" at the forum state).  A defendant's knowledge that the plaintiff resides in the forum state is not enough, on its own, to support personal jurisdiction. *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 69 (9th Cir. 2021).  The plaintiff cannot be the only link between the defendant and the forum," *Walden*, 571 U.S. at 285, because "a tort must involve the forum state itself, and not just have some effect on a party who resides there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017).

In this case, neither the allegations in Plaintiff's FAC, nor the arguments presented in her Response brief, suggest that the Moving Defendants' spread of falsehoods throughout the industry were "expressly aimed" at Nevada.  The Moving Defendants do not dispute that they had knowledge that she resided in Nevada.  But knowledge that the statements would likely affect her reputation in Nevada goes to the foreseeability of the harm in the forum, not whether the defamatory comments were "expressly aimed" at Nevada. *See Xcentric Ventures*, 683 F. Supp. 2d at 1073 ("[I]t is quite foreseeable that the brunt of the reputational harm that results from internet-based defamation is most likely to be felt in the forum where the defamed individual lives, works, and maintains social relationships.").  Without "something more" than statements made with foreseeable effects in Nevada, Plaintiff has not sufficiently met her burden of demonstrating that the Court has personal jurisdiction over the Moving Defendants.

A defendant's tortious actions must be expressly aimed at the forum such that the forum can be said to be the focal point of the activity and the harm suffered. *Calder v. Jones*, 465 U.S. 783, 789 (1984). In *Calder*, the Supreme Court found that acts occurring in Florida were expressly aimed at California because the published story was about the California activities of a California resident, and it degraded the professional reputation of an entertainer whose career was centered in California. *Id.* at 788–89. The article relied on California sources and California was the "focal point of the story." *Id.* at 789. "[T]he brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.*

Unlike the activities found to constitute "express aiming" in *Calder*, the activities here do not make Nevada the "focal point" of the defamatory statements. The accusation that Plaintiff was the cause of the lithium poisoning is based on events occurring in Barcelona, and allegations that Plaintiff suffers from alcohol and substance abuse are not specific to a particular location. In fact, Nevada is only mentioned in the FAC's "Venue" paragraph stating that Defendants sell pornographic materials and promote large conventions in Nevada. (FAC ¶ 22). Plaintiff alleges that after the defamation spread, she suffered reputational harm during two Los Angeles events and incurred financial harm when her adult content was demoted in search results. (*Id.* ¶¶ 90–98). Thus, while the financial harm suffered would impact Plaintiff in Nevada, it's difficult to say that Nevada is the focal point of the activity and harm suffered because the harm appears to be occurring broadly. Any alleged injury "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State," and Plaintiff's financial injury in Nevada does not link defendants to the state. *See Walden*, 571 U.S. at 290. Based on the allegations in Plaintiff's FAC, it seems that the damaging comments were directed at the larger adult film industry in general, without regard or intention for their impacts in Nevada.

But even if Plaintiff could prove the first prong, and the Moving Defendants' acts were purposefully directed at Nevada, she cannot demonstrate that her claims against them arose out of their forum related activities. The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). Aside from the allegation that Defendants sell pornographic materials in Nevada and attend or promote adult industry conventions in Nevada, the FAC does not include specific allegations about Defendants' Nevada activities, let alone connect those activities to her claims that they damaged her reputation by spreading falsehoods throughout the industry. The Court cannot say that Plaintiff's causes of actions would not have occurred, but for the Moving Defendants' sale of pornography and travel to Nevada. Defendants could have spread the same false allegations, even if they had never been to Nevada or sold materials there.

The Moving Defendants' Motion to Dismiss is therefore GRANTED for lack of personal jurisdiction. The additional information included in Plaintiff's Response brief, such as that Moving Defendants' travel to Nevada every three to four months for work "protocols" to ensure rules are being followed, to tape live shows, and to attend parties, does not cure the identified deficiency. Even if Plaintiff alleged these details in an amended complaint, she would still fail to establish causation between the Moving Defendants' defamatory statements and their Nevada contacts, and thus it appears that leave to amend would be futile.

**B. Personal Jurisdiction over Aylo**

Plaintiff asserts that Defendant is subject to both general and specific jurisdiction in Nevada. The Court will begin by evaluating whether Plaintiff has met her burden of demonstrating that general jurisdiction is appropriate. *See Schwarzenegger*, 374 F.3d at 800.

### 1. General Jurisdiction

Aylo argues that the Court lacks general jurisdiction because neither its place of incorporation nor principal place of business are in Nevada. (Aylo Mot. Dismiss 9:15–22). It asserts that it was incorporated in the country of Cyprus, which is also where it maintains its principal place of business. (*Id.* 9:17–19). Aylo also contends that does not have any operations, office, or employees, in Nevada, and Plaintiff does not assert otherwise. (*Id.* 9:22–23). In her Response, Plaintiff argues that Aylo's substantial business operations in Nevada make it essentially "at home" there. (Resp. Aylo Mot. Dismiss 9:15–17). She asserts that it pays for studio space and produces videos in Nevada, markets its products, and participates in major industry events. (*Id.* 9:17–28).

"A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render them essentially at home in the forum State.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 850 (9th Cir. 2022) (quoting *Daimler AG v. Bauman*, 571 U.S 117, 127 (2014)) (alteration omitted). "Only in an 'exceptional case' will general jurisdiction be available" in a forum other than its formal place of incorporation or principal place of business. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). In the Ninth Circuit, courts may consider a non-resident entity's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets" in determining whether an entity is "essentially at home" in the forum state. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)).

The Court finds that Plaintiff has not met her burden of demonstrating that Aylo is essentially "at home" in Nevada. First, Plaintiff does not provide evidence of Aylo's worldwide activities, and the list of Aylo's contacts with Nevada alone is not sufficient

information upon which the Court may determine whether it has general jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("[T]he general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home."). Second, as noted above, Plaintiff alleges only that "the parties conduct business in and have sufficient contacts with the State of Nevada as they sell millions of dollars' worth of pornographic materials in the State of Nevada and attend and promote large conventions in the State of Nevada." (FAC ¶ 22). Not only is this statement not specific to Aylo, but it lacks the relevant details needed by the Court to determine whether Aylo could be considered "at home" in Nevada.

The FAC is mostly devoid of allegations regarding Aylo's operations in Nevada, and the additional details contained in Plaintiff's Response do not remedy the issue. Aylo's activities of filming videos in Nevada, marketing its products, and attending events, are not so pervasive as to render it "at home." A corporation is not essentially "at home" merely because it "engages in a substantial, continuous, and systematic course of business" in the forum state. *Daimler AG*, 571 U.S. at 119; *see also Ranza*, 793 F.3d at 1070 ("[Defendant] sends employees and products into Oregon and engages in commercial transactions there, but such business activity is not so pervasive as to render it "essentially at home" in Oregon."). The Court therefore concludes that it does not have general jurisdiction over Aylo.

**2. Specific Jurisdiction**

Because Plaintiff asserts claims against Aylo sounding in both tort and contract, the Court will first evaluate whether Plaintiff meets her burden of establishing personal jurisdiction under the purposeful direction test. The purposeful direction test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803.

The intentional acts alleged by Plaintiff are that Aylo intentionally disrupted Plaintiff's contractual relationships with customers and representatives in the adult industry, publicly blamed Plaintiff for poisoning Zaawaadi, spread the false accusations about her drug and alcohol abuse, and demoted her adult content online. (*See* FAC ¶¶ 95–166). Aylo asserts that it did not commit an act expressly aimed at Nevada, and Plaintiff's residency cannot be the only connection with Nevada. (Aylo Mot. Dismiss 13:5–23). Plaintiff's Response relies primarily on a purposeful availment argument, and as explained above, the FAC states only that defendants sell pornographic materials in Nevada and attend and promote conventions. (*See* Resp. to Aylo Mot. Dismiss 11:22–23).

This allegation is insufficient to establish the "something more" required for purposeful direction that demonstrates an "express aiming" or "targeting" of Nevada. Plaintiff does not allege that her adult content was demoted in the search results specifically for Nevada audiences, nor that Aylo targeted her contractual relationships in Nevada. Her allegations remain industry-wide, and Aylo's knowledge that Plaintiff would foreseeably be harmed in Nevada is not enough. *See Morrill*, 873 F.3d at 1145.

It is also not clear how Plaintiff's claims arise out of Defendant's activities in Nevada, or stated another way, how Aylo's Nevada business activities give rise to the current suit. Plaintiff asserts in her Response that Aylo sends representatives and agents to Las Vegas, and she regularly interacts with them. (Resp. to Aylo Mot. Dismiss 13:4–16). But she stops before explaining how these Las Vegas visits give rise to the claims in this action. Because she has not met her burden on prong two of the personal jurisdiction test, which is required for both purposeful direction or purposeful availment, the Court GRANTS Aylo's Motion to Dismiss. However, as it is unclear that amendment would be futile, the Court grants Plaintiff leave to amend her FAC to include jurisdictionally relevant facts for specific jurisdiction.

**C. Motion to Seal**

Aylo also moves the Court to seal most of Exhibit B in support of its Motion to Dismiss. (Mot. Seal, ECF No. 29). Exhibit B is the Performer Services Agreement between Plaintiff and Aylo. Plaintiff did not file a Response.

There is a strong presumption of public access to judicial records. *Kamakana v. City & Cnty of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). The standard applicable to a motion to seal depends on whether the materials are submitted in conjunction with a dispositive or a non-dispositive motion. Whether a motion is "dispositive" turns on "whether the motion at issue is more than tangentially related to the merits of a case." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

Aylo asserts that the good cause standard applies, but because the motion at issue is a dispositive Motion to Dismiss, Aylo must put forward "compelling reasons" to seal. This agreement is not a private document "unearthed at discovery," but has become part of the judicial record. *See Pintos*, 605 F.3d at 678. Compelling reasons exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978). The burden to show compelling reasons is not met by conclusory assertions; rather, the movant must "articulate compelling reasons supported by specific factual findings." *Kamakana*, 447 F.3d at 1178. Any request to seal must also be "narrowly tailored" to remove from the public sphere only material that warrants secrecy. *Press-Enterp. Co. v. Superior Court*, 464 U.S. 501, 513 (1984).

The Court finds compelling reasons to seal some portions of the Exhibit, but not the general contact terms. Aylo contends that Plaintiff's personally identifiable information should

be sealed, and the Court agrees. *See Ernest Block, LLC v. Steelman*, No. 2:19-cv-01065-JAD-EJY, 2020 WL 7643223, at *5 (D. Nev. Dec. 23, 2020) (noting that personally identifiable information "outweighs any concern over public access to the records"). The agreement's compensation details may also be sealed, as that sensitive information could be improperly used by competitors. Aylo, however, does not provide a compelling reason for the general contract terms to be sealed. It broadly asserts that the agreement "includes sensitive business operations and potential trade secrets," but these conclusory assertions are not backed up with an explanation. (*See* Mot. Seal 3:25–4:1). The Court does not see why general contract term such as indemnification, termination, warranties, and definitions are sensitive or trade secrets, and Aylo provides no additional clarity. The Court therefore GRANTS in part Aylo's Motion to Seal.

### IV.     CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 13), filed by Defendants Frank Petosa, Ryan Hogan, and Michael Woodside, is **GRANTED.**

**IT IS FURTHER ORDERED** that Aylo's Motion to Dismiss, (ECF Nos. 27, 28), is **GRANTED.**

**IT IS FURTHER ORDERED** that Aylo's Motion to Seal, (ECF No. 29), is **GRANTED in part**.

**IT IS FURTHER ORDERED** that Plaintiff may have 21 days from the date of this Order to file an amended complaint including jurisdictional facts against Aylo.

**DATED** this __31__ day of November, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT