**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Melissa Hutchinson aka Phoenix Marie, | Case No. 2:24-cv-00673-GMN-BNW |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ethical Capital Partners Ltd., et al., | |
| Defendants. | |

Before this Court is Defendant Aylo Premium Ltd.'s Motion to Dismiss Second Amended Complaint. ECF No. 58. Plaintiff responded at ECF No. 64, and Defendant replied at ECF No. 66. For the reasons discussed below, this Court recommends that Defendant's motion be granted.

## I.    BACKGROUND

### A.  Facts and Procedural History

This case arises out of Plaintiff's reputational harm in the adult film industry after Defendants allegedly spread falsehoods about her involvement with an on-shoot medical emergency. *See generally* ECF No. 53. Plaintiff, also known as Phoenix Marie, is an adult performer who has entered into numerous agreements with Defendants' companies to perform in adult films and attend events. *Id.* at 7.

In October 2023, Plaintiff traveled to Barcelona, Spain, to shoot a scene with actor and director Danny D. *Id.* at 8. The actors and staff stayed in the same residence. *Id.* Zaawaadi, a younger actress involved in the shoot, ingested three pills of Imodium before the shoot. *Id.* at 9. Plaintiff warned Zaawaadi that ingesting that amount of Imodium could be harmful and offered her over-the-counter supplements (two probiotic pills and two homeopathic laxative pills) to help counter the ingestion of the Imodium. *Id.* Separately, Liss (Danny D's partner), who was involved with the shoot, disclosed to Plaintiff that she brought lithium on set because she was taking it for her depression. *Id.* at 8.

Later, while the actors were filming a scene, Liss came out of the house yelling, "Emergency! Emergency! She can't breathe." *Id.* at 9. Plaintiff, who had emergency medical technician training, ran into the house to see Zaawaadi lying on the couch, shaking violently, and screaming that she couldn't breathe. *Id.* Plaintiff yelled for someone to call an ambulance and administered emergency care. *Id.* After some delay, Danny D. permitted an ambulance to be called. *Id.* at 10. When the paramedics arrived, Zaawaadi asked Plaintiff to travel with her in the ambulance, but Danny D. grabbed Plaintiff and forced her to finish shooting the scene, even though Plaintiff pleaded to finish the scene another time. *Id.* Against company policy, Plaintiff was forced to have sex despite repeatedly saying no. *Id.* at 10-11.

The next day, Danny D. told Plaintiff that Zaawaadi had overdosed on lithium and was in a medically-induced coma. *Id.* at 12. Plaintiff asked Liss if Zaawaadi ingested her lithium, but Liss said no despite having her pills in a common area of the house. *Id.* at 12. Plaintiff realized Danny D. and Liss intended to blame Zaawaadi's lithium reaction on her. When Plaintiff suggested that everyone get their blood tested for the presence of lithium, they refused. *Id.*

After shooting in Barcelona, everyone at the shoot was required to fly to Berlin to attend an adult convention. *Id.* at 13. When Plaintiff arrived at the hotel, she was told that Aylo executives were waiting to speak with her. *Id.* at 13-14. They verbally attacked her, said that they felt she had not dealt with the death of her daughter in 2019, falsely accused her of having depression and related alcohol and substance abuse, and blamed her for the lithium poisoning in Barcelona. *Id.* at 14. Plaintiff proactively went to a clinic and tested negative for lithium. *Id.* at 15.

Defendants spread these falsehoods all over the industry, damaging her reputation and alienating her from her friends and colleagues. *Id.* at 15. At an industry event in Los Angeles, Plaintiff was removed from the signing booth, and co-stars acknowledged hearing rumors about her. *Id.* at 16. Not long after, she began being blacklisted from the industry, and makeup artists in Los Angeles refused to work with her. *Id.* at 17. The high-traffic adult content websites owned by Defendant Aylo began demoting her material, which cost her exposure and income. *Id.* Aylo also untagged her from certain videos which made her content disappear from search results. *Id.* As of the date of the Second Amended Complaint ("SAC"), Plaintiff alleges that she has lost more than

$1.7 million in revenue because of Defendants' interference with the promotion of her videos and websites. *Id.* at 18.

The Court previously granted Defendant's motion to dismiss, but granted Plaintiff leave to amend. ECF No. 43 at 12. Plaintiff filed her second amended complaint on December 19, 2024. ECF No. 53. In her SAC, Plaintiff brings claims against Defendant Aylo for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* at 18-19. She also brings claims for sexual battery and battery against Danny D., and five claims against all Defendants for (1) intentional interference with contractual relations, (2) intentional interference with prospective business advantage, (3) intentional infliction of emotional distress, (4) defamation, and (5) conspiracy. *Id.* at 19-25. Defendant Aylo moves to dismiss the claims against it. *See generally* ECF No. 58.

### B. Parties' Arguments

Defendant Aylo argues that it is not subject to the Court's personal jurisdiction and that Plaintiff did not amend anything in the complaint to add meaningful allegations supporting a finding of general jurisdiction or specific jurisdiction. ECF No. 58. at 10. Defendant also argues that the Court does not have jurisdiction over it because the Performer Services Agreement Plaintiff signed contained a binding forum selection clause requiring all disputes arising out of the Agreement to be brought in the Republic of Cyprus. *Id.* at 15. Defendant argues that if the Court were to find that it had jurisdiction over it, however, Plaintiff's SAC should still be dismissed for failure to state a claim for breach of the covenant of good faith and fair dealing, interference with contractual relations, intentional interference with prospective economic advantage, intentional infliction of emotional distress, defamation, and conspiracy. *Id.* at 18–25.

Plaintiff argues that Defendant is subject to the Court's general and specific jurisdiction. ECF No. 64 at 9–10. She argues that exercising jurisdiction over Defendant comports with fair play and substantial justice. *Id.* at 13. Plaintiff also argues that the Performer Services Agreement's forum selection clause should not control because the clause is unreasonable and unenforceable. *Id.* at 15. Alternatively, Plaintiff requests leave of court to conduct jurisdictional discovery to ascertain the extent of Defendant's contacts in Nevada. *Id.* at 17. Lastly, Plaintiff

argues that denial is appropriate because her claims are sufficiently stated. *Id.* at 18. If the Court were to find they were not, she requests leave to amend. *Id.*

II.    **DISCUSSION**

    **A.  Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand [a] motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir 1995). In determining whether personal jurisdiction exists, courts take the uncontroverted allegations in a complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* NRS § 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 100 Nev. 408, 411, 683 P.2d 26, 28 (1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise [ ] out of" or "relate[ ] to" the contacts with the forum, even if those contacts are "isolated and sporadic". *Id.*

    **B.  The Court lacks general jurisdiction over Defendant Aylo**

"A Court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render them essentially at home in the forum State." *LNS Enters. LLC v. Cont'l Motors Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *Daimler A.G. v. Bauman*, 571 U.S. 117. 127 (2014)). "Only in an 'exceptional' case will general jurisdiction be available" in a forum other than the defendant's formal place of incorporation or place of business. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

In the Court's order on Defendant's previous motion to dismiss, it found that Plaintiff had not met her burden of demonstrating that Defendant was "essentially at home" in Nevada. ECF No. 43 at 10. The Court found that Plaintiff did not provide evidence of Defendant's worldwide activities, and the list of Defendant's contacts with Nevada alone was not sufficient for the Court to determine whether it had general jurisdiction. *Id.* at 11 (citing to *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015)). The SAC does not remedy this lack of evidence.

The Court also found that Plaintiff's allegation that (1) the parties conducted business in and had sufficient contacts with Nevada because they "sell millions of dollars worth of pornographic materials" and (2) attend and promote large conventions there, lacked the relevant details needed in order to determine whether Defendant could be considered "at home" in Nevada. ECF No. 43 at 11. The facts alleged in the jurisdiction section of Plaintiff's SAC are largely the same as that of her FAC, although the SAC is slightly more detailed. *Compare* ECF No. 9 with ECF No. 53. For example, rather than stating that Defendant "promotes large conventions in the State of Nevada", she states that Defendant is one of "the biggest sponsors and exhibitors of the largest pornography conventions in the world" located in Nevada. ECF No. 53. But these minor amendments still do not provide this Court with the relevant details for it to determine that this is an "exceptional case" where Defendant can be considered "at home" in Nevada even though both its place of incorporation and principal place of business is in Cyprus. *See Martinez*, 764 F.3d at 1066. Therefore, Plaintiff's SAC fails to establish general jurisdiction.

**C.  The Court lacks specific jurisdiction over Defendant Aylo**

Specific jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Specific jurisdiction must arise out of contacts that the defendant itself creates with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985).

Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable

*Schwarzenegger*, 374 F.3d at 802.

Plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff satisfies the first two prongs the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* Personal jurisdiction is not established in the forum state if Plaintiff fails to satisfy either of the first two prongs. *Id.*

Under the first prong of the test, Plaintiff must establish that Defendant either purposefully directed its activities toward Nevada, or purposely availed itself of conducting activities in Nevada. The "purposeful availment" analysis is most often used in suits sounding in contract and the "purposeful direction" analysis is most often used in suits sounding in tort. *Id.* Because Plaintiff asserts claims against Defendant both in tort and contract, this Court will first evaluate whether Plaintiff meets her burden of establishing personal jurisdiction under the purposeful direction test.

> 1. Plaintiff has not shown that Defendant either purposefully directed its activities toward Nevada or purposely availed itself of conducting activities in Nevada.
> **A. Plaintiff's SAC does not establish purposeful direction under the first prong of the specific jurisdiction test**

The purposeful direction test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that defendant knows is

likely to be suffered in the forum state." *Id.* at 803. Express aim requires "something more" than "a foreign act with foreseeable effects in the forum state." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156–57 (9th Cir. 2006) (finding no specific personal jurisdiction where defendant's actions lacked "individualized targeting" at the forum state). The plaintiff cannot be the only link between defendant and the forum. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "A tort must involve the forum state itself, and not just have some effect on a party who resides there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017).

Again, the allegations in the jurisdiction section of Plaintiff's SAC are largely the same as that of her FAC. *Compare* ECF No. 9 with ECF No. 53. Plaintiff added that Defendant sends employees and/or agents to Nevada to supervise and perform quality and safety checks on producers and performers, and that Defendant has "contracts with many adult performers who reside in Nevada, including Plaintiff." *Id.* at 5. However, these facts, while not included in the jurisdictional section of Plaintiff's FAC, were already alleged in other parts of her FAC and in her response to Defendant's previous motion to dismiss. *See* ECF Nos. 9, 26. The Court found that neither the facts in the FAC nor in Plaintiff's response were sufficient to establish the "something more" required for purposeful direction that demonstrates an "express aiming" or "targeting" of Nevada. ECF No. 43 at 12.

Plaintiff's SAC does not contain additional allegations to suggest that her adult content was demoted in the search results specifically for Nevada audiences, nor that Defendant targeted her contractual relationships in Nevada. Her allegations remain industry wide and the specific instances in which Plaintiff argued she suffered reputational harm occurred during shows in Berlin and Los Angeles, not in Las Vegas. *See* ECF No. 53 at 13, 16–17. It may have been foreseeable that some injury giving rise to a lawsuit in Nevada could occur given that Defendant knew Plaintiff was from Las Vegas. But the potential foreseeability of some incidental harm to Plaintiff in Nevada due to actions that were industrywide is not enough. *See Morrill*, 873 F.3d at 1145. Because Plaintiff fails to allege that Defendant's actions were expressly aimed at Nevada and that Defendant caused harm it knew was likely to be suffered in Nevada, her SAC does not meet the purposeful direction test.

**B. Plaintiff's SAC does not establish purposeful availment under the first prong of the specific jurisdiction test**

Since Plaintiff asserts some claims based in contract, this Court will also evaluate whether Plaintiff shows the Defendant engaged in purposeful availment to meet her burden of establishing specific jurisdiction. Purposeful availment exists when a defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws" and in return "submit[s] to the burdens of litigation" in the forum state. *Schwarzenegger*, 374 F.3d at 803; *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023).

Defendant argues that the SAC concedes that all activities at issue occurred outside of Nevada such that Plaintiff's claims do not "relate to" Nevada. ECF No. 58 at 12. It argues that the Performer Services Agreement was not negotiated with Defendant, entered into, or even performed in Nevada, so there was no purposeful availment under the facts of the case. *Id.* (citing *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (concluding there was no purposeful availment where a contract was negotiated in England and made no reference to the United States as a place for dispute resolution, and no authorized agents were alleged to perform any part of the contract in the state of California)). Plaintiff argues that because there are "many actors under contract" with Defendant in the state, Defendant has purposely availed itself of the privilege of conducting activities within the forum state. ECF No. 64 at 12.

Although courts consider all relevant factors in evaluating purposeful availment, the Supreme Court had identified four actors as particularly instructive: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing. *Burger King*, 471 U.S. at 479.

In evaluating prior negotiations, courts consider facts related to the defendant's solicitation of business in the forum state, the location of contract negotiations, and the location of the defendant's execution of the contract. *See ESGS Inc. v. Seven Mile Food and Beverage, LLC*, No. 2:22-cv-01340-GMN-BNW, 2023 WL 2561157, at *5 (D. Nev. March 17, 2023). Plaintiff does not allege many facts as to the creation of her contract with Defendant other than to say that

in early October 2023, Defendant met with Plaintiff "to discuss the plans they'd mapped out for her for 2024" and indicated that Defendant planned to fulfill the current contract and renew for an additional year. ECF No. 53 at 8. These discussions took place in Montreal, Canada, not in Nevada. *Id.* Accordingly, this factor does not favor a finding of purposeful availment.

In evaluating the second factor, courts focus on whether the defendant created "continuing obligations between [itself] and residents of the forum." *Corp Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987) (internal quotation marks omitted). Purposeful availment is not satisfied if the quality and nature of the defendant's relations with a forum are the result of "random", "fortuitous", or "attenuated" contacts. *Burger King*, 471 U.S. at 475. Plaintiff did not attach a copy of the Agreement between it and Defendant, and while her affidavit states that Defendant contracts with Plaintiff and other Nevada residents, she does not provide details as to what those Agreements entail. ECF No. 64-1 at 1. As a result, this Court cannot make a determination regarding contemplated future consequences created by the Agreement.

Nevertheless, Plaintiff indicated in her SAC that at the October 2023 meeting with Defendant they discussed 12 months of video shoots, events, and awards. ECF No. 53 at 7–8. Plaintiff fails to explicitly state that any of these responsibilities were to occur in Nevada. That Plaintiff likely signed a new Agreement on an annual basis indicates some continuing obligation between Plaintiff, a Nevada resident, and Defendant. But there is no evidence that Defendant sought out Plaintiff in Nevada or benefitted from Plaintiff's residence in Nevada. *See Davis*, 71 F.4th at 1163 (finding no purposeful availment despite an agreement with an Idaho resident plaintiff where there was no evidence plaintiff was sought out in Idaho or that defendant benefitted from plaintiff's residence in Idaho). Thus, the "future consequences" factor does not support a finding of purposeful availment.

Terms of contract documents that provide a Defendant with "fair notice" that it may be subject to suit in the forum state weigh in favor of a finding of purposeful availment. *Burger King*, 471 U.S. at 463. Plaintiff did not provide a copy of the Agreement in her SAC or Response, but Plaintiff does not deny Defendant's contention that the Agreement included a forum clause that stated that disputes or controversies arising out of the Agreement be under the exclusive

jurisdiction and venue of courts in the Republic of Cyprus. ECF No. 58 at 15. Considering that the Agreement expressly provides that parties could be subject to suit in Cyprus rather than in Nevada, this factor does not support purposeful availment.

In evaluating "course of dealing", courts focus on whether the "substantial and continuing relationships" with the forum resident gave the defendant "fair notice that he might be subject to suit" in the forum. *Burger King*, 471 U.S. at 463. The allegations in Plaintiff's SAC come closest to establishing this factor. Plaintiff states that Defendant sends employees and/or agents to Nevada to supervise and perform quality and safety checks on producers and performers, that Defendant contracts with many adult performers who reside in Nevada, and that Defendant is a sponsor and exhibitor at an annual pornography convention in Las Vegas. ECF No. 53 at 5. This suggests there could be a continuing relationship with the forum, but Plaintiff does not provide enough relevant details for this Court to determine whether it is a *substantial* relationship. On balance, Plaintiff's contractual relations with Defendant do not constitute purposeful availment of the benefits and protections of Nevada law. *See Burger King*, 471 U.S. at 479. Therefore, Plaintiff's SAC does not meet the purposeful direction test.

### 2. Plaintiff fails to meet her burden on the second prong of the specific jurisdiction analysis

Prong two of the specific jurisdiction analysis is whether a plaintiff's claim arises out of or relates to a defendant's activities in the forum. *Schwarzenegger*, 374 F.3d at 802. The Court previously found that Plaintiff's FAC failed to establish that Defendant's business activities in Nevada gave rise to the current suit. ECF No. 43 at 12. The Court specifically stated that although Plaintiff asserted Defendant sent representatives and agents to Las Vegas and that she regularly interacts with them, she stopped before explaining how these visits gave rise to the present action. *Id.* Plaintiff's SAC and response to Defendant's motion to dismiss the SAC likewise do not explain how Defendant sending employees or agents to supervise and perform quality and safety checks in Nevada relates to the present action. Indeed, insofar as Plaintiff alleges claims related to quality and safety violations, any potential violation occurred at the shoot in Spain. *See* ECF No. 53 at 9–11. Thus, even if Plaintiff were to have met her burden on prong one of the specific

jurisdiction test, Plaintiff again fails to meet her burden on prong two. Since Plaintiff failed to meet her burden on the first two prongs of the specific jurisdiction analysis, the Court's personal jurisdiction over Defendant is not established.

Plaintiff's alternative request for leave to conduct jurisdictional discovery is equally unavailing. Plaintiff does not specify what she would be seeking in her jurisdictional discovery request other than to vaguely assert that Defendant may have additional Nevada contacts that she is not yet aware of. ECF No. 64 at 18. Moreover, based on the information currently before this Court, it is unclear how additional discovery could enable Plaintiff to satisfy the factors for establishing specific jurisdiction or to demonstrate that this case is exceptional enough to warrant general jurisdiction. Accordingly, the Court should GRANT Defendant's motion to dismiss for lack of personal jurisdiction with prejudice.

## III.   CONCLUSION

**IT IS RECOMMENDED** that Defendant's motion to dismiss (ECF No. 58) be **GRANTED**.

## NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: February 2, 2026

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE